J. H. GREER *v.* A. H. BUSH ET AL.

1. ACCOMMODATION INDORSER.    *Future advances.    Assignment.*
   An accommodation indorser to order of a promissory note payable to his order given to a commercial firm for supplies to be furnished the

maker is liable for advances so made by a new firm created by the death of one partner and the admission of another, to which the assets and business of the original partnership are transferred: *aliter*, in case of an unassignable contract, such as a personal letter of credit.

2. SAME. *Balance due. Advances after maturity.*

Although the payments exceed the face of the note, the indorser, such being the contract, is liable for the balance due at the maturity of the note, but not for advances subsequently made.

3. SAME. *Payment. Delivery of mortgaged property.*

Cotton embraced in a mortgage executed by the maker to the firm to secure the note, although delivered by the former to the latter, cannot be claimed by the indorser as a payment, if the firm, without knowing that it was the mortgaged cotton, gave the maker its full value.

4. CIRCUIT COURT. *Practice. Variance. Jeofails.*

The objection of variance must be distinctly raised before verdict, in order that the court may determine the propriety of an amendment, and asking an instruction which is too vague to admonish the court or the opposing party is insufficient for the purpose.

ERROR to the Circuit Court of Clay County.

Hon. JAMES M. ARNOLD, Judge.

The declaration in this case alleges that the note sued on was indorsed in Mobile, Alabama, but there was evidence that the indorsement was made in this State. The following charge was asked by the defendant and refused: " If the jury believe from the evidence that J. H. Greer lived at Shuqualak, in Mississippi, and indorsed the note in controversy there, then the contract of Greer is governed by the laws of Mississippi, and not of Alabama, and the jury will find for the defendant."

*L. Brame*, for the plaintiff in error, argued the case orally, and filed a brief.

1. Although the note is a negotiable instrument, it is competent to show that Greer indorsed for accommodation, and is, therefore, a mere surety. *Hardy* v. *Pilcher*, *ante*, 18 ; *Meggett* v. *Baum*, *ante*, 22 ; 1 Parsons on Notes and Bills, 233, notes ; 2 Daniel on Neg. Inst. § 1338, notes. The plaintiffs are not *bona fide* holders. The original firm knew of Greer's relation to the paper, and the surviving partners, having notice, carried it into the new firm. 2 Parsons on Notes and Bills, 27. As the note was not taken for a debt, but for amounts to

be advanced not exceeding its face, it was incumbent on the plaintiffs to show what debts were embraced in the security and the amount due thereon. *Maitland* v. *Citizens' Bank*, 40 Md. 540; *Stoddard* v. *Kimball*, 4 Cush. 604; *Williams* v. *Cheney*, 3 Gray, 215; *Roche* v. *Ladd*, 1 Allen, 436; *Mayo* v. *Moore*, 28 Ill. 428; *Gillam* v. *Huber*, 4 G. Greene, 155; *Tarbell* v. *Surtevant*, 26 Vt. 513; *Grant* v. *Kidwell*, 30 Mo. 455; *Williams* v. *Smith*, 2 Hill, 301.

2. The firm with which Greer contracted was dissolved by the death of a partner (Story Part. §§ 343, 347), before much was advanced and the advances by that firm have been paid. A guaranty for advances to be made or credits to be given from time to time by a firm to a third person will not be extended beyond the actual import of its terms, and the guarantor will not be liable for advances made or credit given after any change in the firm, such as the retirement or death of an old partner or the admission of a new one. Story Part. §§ 245, 249; Collyer Part. 443; 2 Parsons on Contracts, 19, 20, notes. The doctrine applies to more formal instruments, such as bonds. In equity, the contract has the same extent and limitation as at law. *Strange* v. *Lee*, 3 East, 484; *Pemberton* v. *Oakes*, 4 Russ. 154; *Penoyer* v. *Watson*, 16 Johns. 100; *Robbins* v. *Bingham*, 4 Johns. 476; *Weston* v. *Barton*, 4 Taunt. 673; *Walsh* v. *Bailie*, 10 Johns. 180; *Barns* v. *Barrow*, 61 N. Y. 39. If it could be shown that the change in the firm was beneficial to the surety, he would still not be bound. *Bethune* v. *Dozier*, 10 Ga. 235; *Atlanta Bank* v. *Douglass*, 51 Ga. 205. The surety's contract is *stricti juris*, he relies on the original members of the firm, and as to advances by a new firm may well say *non in hæc fœdera veni*. The recklessness of the new firm is shown by the large advances to Hibbler after the maturity of the note. Owing to the fact that Greer's indorsement was special to Bush, Yates & Co., the note was not negotiable, and the rule in favor of a *bona fide* holder does not apply. 2 Parsons on Notes and Bills, 27. The cases of *Pease* v. *Hirst*, 10 B. & C. 122, and *Barclay* v. *Lucas*, 1 T. R. 291, are the only authorities cited by opposing counsel that tend to sustain his position. The former was decided in Lord Tenterden's absence

and Parke, J. took no part.   Both are opposed to all the other cases; and, if they can be sustained at all, it must be on the ground that the guaranty was to a banking institution, or that the extrinsic evidence showed that the guaranty was continuing in its nature, neither of which is true in the case at bar.   The text-books cited by opposing counsel are, so far as applicable to this case, based on these two decisions.

3. The advances by the new firm, however, have been so far paid that nothing is due on the note.   Greer is entitled to have the first payments applied in satisfaction of the note. The balance is simply an amount due by Hibbler on his individual account.   The law favors the surety, especially if his suretyship is not for a pre-existing debt.   If the principal owes another debt, a payment will, in the absence of an application by the parties, be placed to the credit of the secured debt.   2 Parsons on Contracts, 633, notes.   The cotton, covered by the trust deed, was received and sold by Bush, Yates & Co., and the proceeds applied to the open account.   The application should have been to the mortgage debt.   Hibbler's failure to notify them that the cotton was embraced in the trust deed cannot affect Greer. The new firm should have prevented Hibbler from misapplying property which he had conveyed in trust for Greer's protection.   A creditor who takes collateral security is bound to hold it impartially and justly for the benefit of the surety.   *Payne* v. *Commercial Bank*, 6 S. & M. 24; *Meyer* v. *Blakemore*, 54 Miss. 570.   To the extent of the value of the cotton, the mortgage debt is satisfied.   *Ogden* v. *Harrison*, 56 Miss. 743; *Webster* v. *Singley*, 53 Ala. 208; 1 Hill on Mortgages, 278, 279.   The surety's liability becomes fixed only when the collateral security is exhausted.   *Dussol* v. *Bruguiere*, 50 Cal. 456; *Wharton* v. *Duncan*, 83 Penn. St. 40; *Kirkpatrick* v. *Howk*, 80 Ill. 122. Doubt as to liability is solved in favor of the surety.   *Stull* v. *Hance*, 62 Ill. 52.   A guarantor is discharged by the surrender of any security held by the creditor.   2 Daniel on Neg. Inst. § 1789, note; Fell on Guaranties & Suretyship, 215–217; Story on Prom. Notes, § 485.   Dealing with the principal which may vary or enlarge the liability discharges the surety.   *Mayhew* v. *Boyd*, 5 Md. 102.   The creditor cannot receive from the

debtor, in satisfaction of one debt, property on which there is a lien to secure another, so as to defeat the right of a surety for the latter debt to have the same applied to the discharge of his liability. *McMullen* v. *Hinkle*, 39 Miss. 142. Greer, and not Hibbler, was the person to be consulted, for he was the party interested, and him the creditors were bound to protect. *Clopton* v. *Spratt*, 52 Miss. 251. Hibbler had parted with the title to the cotton for Greer's benefit.

4. The variance was taken advantage of by the defendant before the verdict, by the instruction which was asked and refused. It is difficult to define the ground of the refusal. Emboldened by this ruling, the plaintiffs refused to amend as they could have done. If any part of the contract proved is different from that laid in the declaration, the variance is fatal. *Drake* v. *Surget*, 36 Miss. 458; *Phipps* v. *Ingraham*, 41 Miss. 256. How are parties to be compelled to allege the case they intend to prove? The general issue denied every thing. The case of *Carter* v. *Preston*, 51 Miss. 423, is decisive of this point.

*Barry & Beckett*, on the same side.

1. The statute (Code 1871, §§ 622, 623) does not obviate the necessity for amendment in cases of variance, but provides that, where the opposing party is not misled, it may be made without costs. The defendant took advantage of the defect by his instruction. The difference is material, for the contract is governed by the law of the place where the indorsement is made. *Musson* v. *Lake*, 4 How. 262; *Aymar* v. *Sheldon*, 12 Wend. 439; *Hendricks* v. *Franklin*, 4 Johns. 119; *Hicks* v. *Brown*, 12 Johns. 142; *Powers* v. *Lynch*, 3 Mass. 77. If the jury had found a special verdict, that the indorsement was made at Shuqualak, Mississippi, and if that was a defence they found for the defendant, otherwise for the plaintiff, the judgment would have been necessarily for the defendant. The instruction was right and the verdict clearly wrong.

2. The accommodation indorser occupies the place of a guarantor, and may show that in an action at law. *Hardy* v. *Pilcher*, ante, 18; *Meggett* v. *Baum*, ante, 22. Advances made after the firm was changed are not chargeable against the guarantor. *Robbins* v. *Bingham*, 4 Johns. 476; *Walsh* v. *Bailie*,

10 Johns. 180; *Penoyer* v. *Watson,* 16 Johns. 100; *Lawrence* v. *McCalmont,* 2 How. 426, 453; *Boyce* v. *Edwards,* 4 Peters, 111, 119; *Myers* v. *Edge,* 7 T. R. 254; *Boston Ice Co.* v. *Potter,* 123 Mass. 28; *Bellairs* v. *Ebsworth,* 3 Camp. 53; *Russell* v. *Perkins,* 1 Mason, 368; *Weston* v. *Barton,* 4 Taunt. 673, 682; *Bodenham* v. *Purchas,* 2 B. & Ald. 39; *Kipling* v. *Turner,* 5 B. & Ald. 261; *Wright* v. *Russell,* 3 Wils. 530; *Barclay* v. *Lucas,* 3 Dougl. 321; *Barker* v. *Parker,* 1 T. R. 287; *Dry* v. *Davy,* 2 Per. & Dav. 249; *Place* v. *Delegal,* 4 Bing. (N. C.) 426; *Dance* v. *Girdler,* 4 B. & P. 34; *Cremer* v. *Higginson,* 1 Mason, 323; *Strange* v. *Lee,* 3 East, 484; *Pemberton* v. *Oakes,* 4 Russ. 154, 167; *Chapman* v. *Beckinton,* 3 Q. B. 703; *Simson* v. *Cooke,* 1 Bing. 452; *Stephens* v. *Benning,* 1 Kay & J. 168; s. c. 6 De G. M. & G. 223; *Tasker* v. *Shepherd,* 6 H. & N. 575; *Stewart* v. *Rogers,* 19 Md. 98; 2 Parson on Contracts, 19, 20, 21; 3 Add. on Contracts, § 1121; Story Part. §§ 245–250.

3. Greer's indorsement was not a continuing guaranty for any balance which Hibbler might owe to the amount of the note, but was exhausted when that sum was advanced. *Cremer* v. *Higginson,* 1 Mason, 323; *White* v. *Reed,* 15 Conn. 457; *Fellows* v. *Prentiss,* 3 Denio, 512; *Whitney* v. *Groot,* 24 Wend. 82; *Rogers* v. *Warner,* 8 Johns. 119. After that sum was advanced, the first payments would go to its credit. 2 Parsons on Contracts, 21, 23, 633, notes. The advances after the maturity of the note are not chargeable on Greer in any view; and the amount actually advanced by the new firm under the guaranty has been overpaid, for Greer was not liable for Hibbler's individual account.

4. The amount advanced on the guaranty should be credited with the proceeds of the mortgaged cotton. *Whitney* v. *Groot,* 24 Wend. 82; *Hicks* v. *Bingham,* 11 Mass. 300; *Winter* v. *Garrard,* 7 Ga. 183; *Toll* v. *Hiller,* 11 Paige, 228; *Rogers* v. *Rogers,* 1 Halst. Ch. 32; Edwards on Bills and Notes, 563; 1 Hilliard on Mortgages, 505, 506, notes. It may have been Greer's duty to see that this cotton was shipped to the creditors, but he was not bound to go to Mobile to see that they made the proper credit. *Clopton* v. *Spratt,* 52 Miss. 251. A case of grosser negligence than that of these creditors can-

not be conceived. With the cotton in their hands mortgaged to secure the debt, they deliberately misapplied the proceeds, and now seek to hold Greer on the ground of want of knowledge. It was their business to know. Whenever a payment is made by delivery of the property conveyed in a mortgage, the law applies it to the mortgage debt, although the debtor may owe others to the same creditor. *Windsor* v. *Kennedy*, 52 Miss. 164. If the property of the debtor comes into the creditor's hands, and he has the means of paying the debt, the surety is discharged *pro tanto*. Fell on Guaranties & Suretyship, 216, 217; *Everly* v. *Rice*, 20 Penn. St. 297; *New Hampshire Savings Bank* v. *Colcord*, 15 N. H. 119; *Baker* v. *Briggs*, 8 Pick. 122; *Hayes* v. *Ward*, 4 Johns. Ch. 123; *Praed* v. *Gardiner*, 2 Cox, 86; *Commonwealth* v. *Vanderslice*, 8 Serg. & R. 457; *Lichtenthaler* v. *Thompson*, 13 Serg. & R. 157; *Hunt* v. *Bridgham*, 2 Pick. 581; *Law* v. *East India Co.*, 4 Ves. Jr. 824; *Payne* v. *Commercial Bank*, 6 S. & M. 24; *Philips* v. *Astling*, 2 Taunt. 206; *Sneed* v. *White*, 3 J. J. Marsh. 525; Story on Prom. Notes, § 485; 3 Add. on Contracts, § 1140; 2 Parson on Contracts, 110, and note (*t*); *Noland* v. *Clark*, 10 B. Mon. 239.

*R. C. Beckett*, on the same side, made an oral argument.

*Beall & Critz*, for the defendants in error.

1. The objection of variance must be made by motion to exclude the evidence. After verdict, it comes too late. *Stier* v. *Surget*, 10 S. & M. 154; *Grigsby* v. *Ford*, 3 How. 184. The defect cannot be taken advantage of by instructions. Besides, the only question raised by the charge asked in this case was as to the law of the contract. The plaintiff in error could not make the point in that vague and clandestine manner. If the variance was material, the plaintiffs had the right to amend. Code 1871, § 623. The defendant was not misled, and hence the variance was immaterial. 1 Greenl. Evid. §§ 63, 275, notes; Stephen on Pl. 107, 108. As the law of the place of payment governs as to the holder's rights, the charge stated what is not law, and for that reason was properly refused. *Ellis* v. *Commercial Bank*, 7 How. 294; *Hicks* v. *Brown*, 12 Johns. 142; *Bank of United States* v. *Donnally*, 8 Peters, 361; *Cooper* v. *Waldegrave*, 2 Beav. 282; *Lewis* v. *Owen*, 4 B. & Ald. 654.

2. The advances by the new firm are secured by the indorsement, which was executed by Greer to make the note negotiable paper. Its negotiation according to the intent of the parties infused life into it, and precluded the defence of want of consideration. *Meggett* v. *Baum, ante,* 22. As the note and indorsement were designed as a continuing security, the indorser is liable notwithstanding the change in the firm. *Pease* v. *Hirst,* 10 B. & C. 122; *Barclay* v. *Lucas,* 1 T. R. 291; Smith's Merc. Law, 99; Collyer Part. 631. The authorities cited by opposing counsel in support of the general rule that a guarantor is discharged by a change in the partnership in case of unassignable contracts, do not apply, because this is a promissory note payable and indorsed to order, and both the contract and extraneous evidence show the intent of the parties that the surety's liability should follow the instrument into whatever hands it came.

3. Hibbler's fraud, in selling the defendants in error the mortgaged cotton, cannot exonerate Greer. If a principal releases himself by fraud, his surety remains liable. *Gordon* v. *M'Carty,* 3 Wharton, 410; Brandt on Suretyship and Guaranty, § 216. It is the surety's duty, not the creditor's, to watch the principal, and see that he performs his contract. *Harris* v. *Newell,* 42 Wis. 687; *Wright* v. *Simpson,* 6 Ves. 714; *Gilbert* v. *Marsh,* 19 N. Y. 519; *Frye* v. *Barker,* 4 Pick. 382; *Hunt* v. *Bridgham,* 2 Pick. 581; *Fulton* v. *Matthews,* 15 Johns. 433; *Bellows* v. *Lovell,* 5 Pick. 307; 2 Am. Lead. Cas. (5th ed.) 415; *Page* v. *Webster,* 15 Maine, 249; *Davis* v. *Huggins,* 3 N. H. 231; *Mahurin* v. *Pearson,* 8 N. H. 539; *Hogaboom* v. *Herrick,* 4 Vt. 131; *Dennis* v. *Rider,* 2 McLean, 451; *Carr* v. *Howard,* 8 Blackf. 190; *Taylor* v. *Beck,* 13 Ill. 376; *Pickett* v. *Land,* 2 Bailey (S. C.), 608; *Hubbard* v. *Davis,* 1 Aiken (Vt.), 296; *Montpelier Bank* v. *Dixon,* 4 Vt. 587; *Baker* v. *Marshall,* 16 Vt. 522; *Hickock* v. *Farmers' Bank,* 35 Vt. 476; *Page* v. *Webster,* 15 Maine, 249; *Bull* v. *Allen,* 19 Conn. 101; *Pintard* v. *Davis,* 1 Zabr. 632; *Pintard* v. *Davis,* Spencer (N. J.), 205; *Sasscer* v. *Young,* 6 Gill & J. 243; *Croughton* v. *Duval,* 3 Call, 60; *Jenkins* v. *Clarkson,* 7 Hamm. (Ohio), 72; *Cohea* v. *Commissioners of the Sinking Fund,* 7 S. & M. 437; *Johnson* v. *Planters'*

*Bank,* 4 S. & M. 165.   The surety may be exonerated from
liability, to the extent to which he is prejudiced by the posi-
tive act of the creditor in parting with legal or equitable
securities, which the latter might have held for the benefit
and protection of the surety, but mere passive indulgence or
delay, as, for instance, his neglect to possess himself of goods
mortgaged to him by the principal debtor as additional secu-
rity for the ultimate payment of the debt, will not have that
effect.   *Freaner* v. *Yingling,* 37 Md. 491 ; *Black River Bank*
v. *Page,* 44 N. Y. 453 ; *Crane* v. *Stickles,* 15 Vt. 252 ; *John-
son* v. *Planters' Bank,* 4 S. & M. 165 ; Theobald on Prin. &
Sur. 80 ; *Caruthers* v. *Dean,* 11 S. & M. 178 ; *Pickens* v.
*Finney,* 12 S. & M. 468 ; *Cohea* v. *Commissioners of the Sinking
Fund,* 7 S. & M. 437 ; *Payne* v. *Commercial Bank,* 6 S. & M.
24.   Loss of another security by mere passiveness, in the
absence of a request to act, has never been held to discharge
the surety.   *Philbrooks* v. *McEwen,* 29 Ind. 347 ; *United States*
v. *Kirkpatrick,* 9 Wheat. 720 ; 2 Am. Lead. Cas. 391, 397, 401,
410, 447.   The trust deed was made for the creditor's protec-
tion, not Greer's ; and the title did not pass from Hibbler until
breach of the condition, prior to which the cotton was sold and
paid for.   Code 1871, § 2295.   No negligence is imputable to
the creditors, who could not have even distinguished this
cotton from the other bales shipped by Hibbler.   *Freaner* v.
*Yingling,* 37 Md. 491.   Hibbler was not the creditor's agent.
*Farmers' Bank* v. *Lucas,* 26 Ohio St. 385 ; *Casoni* v. *Jerome,*
58 N. Y. 315.   His fraud could not discharge his surety, unless
the creditors participated therein.   *Wayne* v. *Commercial Bank,*
52 Penn. St. 343 ; *Griffith* v. *Reynolds,* 4 Gratt. 46 ; *West-
ern New York Ins. Co.* v. *Clinton,* 66 N. Y. 326.   It is no
defence for the surety against these *bona fide* holders of the
note, that the principal without notice to them has misapplied
the cotton.   *Stoddard* v. *Kimball,* 4 Cush. 604; Brandt on
Suretyship and Guaranty, §§ 353, 354, 365.

4. Excluding the advances made after maturity of the note
will not affect the result.   The debits largely exceed the
amount secured by the indorsement, and the contract and
course of dealing between the parties show that the security
was to cover the balance which should finally be due, at the

maturity of the note. Hibbler had no credit with the firm apart from that due to Greer's name. His individual account is a mere fancy of opposing counsel. If the advances under the indorsement, not paid, are credited with the cotton embraced in the mortgage, it will reduce the amount of the recovery, but the answer to the objections as to Hibbler's personal debt, and the credits after maturity, is that enough is proved to have been advanced on the faith of the indorsement to leave a large balance due.

*F. A. Critz*, on the same side, argued the case orally.

CHALMERS, J., delivered the opinion of the court.

Talbot Hibbler, a merchant at West Point in this State, made arrangements to procure advances during the year, to the amount of three thousand dollars, from Bush, Yates & Co., a firm composed of A. H. Bush and others, cotton factors of Mobile, Alabama, the money advanced to be invested in cotton which was to be shipped for sale to the Mobile firm. The contract was evidenced by a written note for the amount specified, made by Hibbler, dated March 25, 1876, due Dec. 1 thereafter, payable to J. H. Greer or order, and by Greer indorsed to the order of Bush, Yates & Co. Greer was the uncle of Hibbler, and an accommodation indorser of the note. The note was further protected by a trust-deed executed by Hibbler on real and personal property. Hibbler is now a discharged bankrupt, and this suit is against Greer, the indorser, to recover an alleged balance of eight hundred and seventy-nine dollars, due on the note. It will be borne in mind that the note represented not any amount actually loaned upon it at the date of its execution, but sums to be thereafter advanced, and consequently no recovery can be had upon it except to the extent of such advances. One month after its execution, one of the members of the firm of Bush, Yates & Co. died, and a new firm was formed under the same name with a new member. All the assets of the old firm were transferred to, and all its liabilities assumed by, the new one. A few hundred dollars only had been advanced upon the note at the date of the change in the firm, but the full amount was subsequently

advanced; and it being admitted that the payments afterwards made by Hibbler were sufficient to extinguish the advances made by the old firm, but insufficient to liquidate those made by the new one, the first question presented by the record is whether Greer, the indorser, is liable for these latter advances, or whether his liability ceased with the dissolution of the old firm.

The contract of a surety is always *stricti juris*, and where it takes the shape of a guaranty of future advances, the authorities are uniformly to the effect that, in the absence of something in the contract to indicate that it is assignable, the guarantor is not liable if the advances are made by any other than him with whom he entered into the contract. Hence it is held that where a bond of indemnity for the future conduct of another or a letter of credit for future advances has been given, any change in the firm to which it is given will vitiate the claim for subsequent misconduct or advances thereafter made. In such case, the guarantor may well say that he relied upon the outgoing partner for a supervisory control of the conduct indemnified or of the advances to be made, and that he trusted to the business skill of such outgoing partner in restraining, or to his friendship in reporting, any conduct on the part of the principal that would endanger his interest as surety; and therefore, to all claims by the new firm that they are protected by his indemnity, he may successfully respond *in hœc fœdera non veni.* Story Part. §§ 245, 246, *et seq.;* Collyer Part. 443, 444; Brandt on Suretyship & Guaranty, §§ 97–99; Parsons Part. 331, 332. Such is the law where there is nothing in the contract of indemnity to indicate that it is assignable; but, on the contrary, if the contract shows that it was intended to be made assignable, it will justify all to whom it may properly come in trusting to and relying upon it.

In the present case, the guaranty took the shape of a promissory note, payable to order. Is this a sufficient indication that the guarantor (indorser) undertook to be responsible to any and all persons who might, upon the faith of that note when properly transferred to them, make to Hibbler the advances desired by him? It was so ruled, and, we think, cor-

rectly in the only case directly in point that we have been able to find. *Pease* v. *Hirst*, 10 B. & C. 122. It is obvious that, if the guarantor puts his obligation into the form of negotiable commercial paper absolute upon its face, he subjects himself to the hazard of its passing into the hands of innocent holders for value, who would have the right to hold him, not only upon a contract of indemnity for such sums as had in fact been advanced or might thereafter be advanced, but also for the absolute payment of the entire sum specified. It seems equally clear that, if under such circumstances the paper comes into the hands of a person who knew its true character, he may receive it with the same rights as the original holder. By giving it a negotiable character, the makers have, in effect, said that it may be assigned. But what is there to assign if no advances have been made or can thereafter be made upon it? As we cannot assume that the parties intended a purposeless act, we must conclude that the object of putting the contract in such shape was to authorize its assignment with the same right in the assignee as belonged to the original holder; namely, that of thereafter advancing upon it up to the sum specified. We conclude, therefore, that the indorser, in this instance, was liable as well for the advances made by the new firm as for those made by the original one.

It is objected that in point of fact he was made liable for dealings far in excess of the three thousand dollars specified in the note, the amount recovered being a balance due upon dealings aggregating more than twelve thousand dollars, many of the debits being upon transactions which took place after the maturity of the note, and after it had been protested for non-payment. The money received by Hibbler was advanced from time to time in such sums as demanded, and, as received, was invested in cotton, which when bought was shipped to the Mobile firm. Cotton was frequently bought on margin, and the full amount of its value drawn for as shipped, credit being given by the factors for the amount which the cotton brought when resold in the Mobile market. That the aggregate sum of these dealings exceeded the amount stipulated in the note did not affect the liability to a recovery for the balance due at the maturity of the note, provided such balance did not ex-

ceed three thousand dollars. Such was the course of dealing anticipated between the parties, it being understood that a bale of cotton should be forwarded for every ten dollars advanced, or three hundred bales in the aggregate, the total value of which would, of course, amount to twelve or fifteen thousand dollars, and it was the balance which might be found due upon these transactions up to three thousand dollars that Greer was responsible for.

The account, as sued upon, embraces dealings between Hibbler and the plaintiffs after the maturity of the note, and is, in that regard, erroneous. It was not competent for the factors to continue indefinitely their dealings with the principal and hold the guarantor liable for any and all advances which might be made at any time before the note would become barred by the Statute of Limitations. The contract, having taken the shape of the indorsement of a promissory note due at a certain date, must be held as limiting the liability of the indorser for all sums advanced up to that date or for the balance then due, and not as binding him to pay whatever might become due upon dealings indefinitely prolonged. A restatement of the account, however, upon this basis does not affect the result, the balance due at the maturity of the note being about the same as at the final close of the account.

Part of the cotton shipped by Hibbler, was eleven bales raised upon his own plantation, the entire crop to be grown upon said plantation being embraced in the mortgage given to protect the note. This cotton was mingled with that which was bought on margins and was drawn against in excess of its value at the time of its shipment, so that practically the plaintiffs obtained no benefit from its reception, so far as a liquidation of the amount represented by the note was concerned. It is nevertheless insisted that the receipt of this cotton operated as a payment *pro tanto* upon the note, so far as Greer, the indorser, was concerned. We do not think so. It is true that the delivery of mortgaged property ordinarily operates *eo instanti* as a payment of the mortgage debt to the extent of its value; but in this instance the creditors, misled by the principal debtor, and ignorant that they were receiving mortgaged property, paid to him, at the time of its reception,

its full value in money. Certainly, then, Hibbler cannot claim that the delivery of the cotton operated as a payment on the note, and while his surety might do so, if there had been collusion or even knowledge upon the part of the creditors, he cannot in the absence of such showing. If he is damnified by the transaction, it is by the act of him for whose conduct he had bound himself. To permit him now to claim credit for property, thus unwittingly paid for by the creditors in consequence of the concealment or omission of his principal, would be to allow the perpetration of a fraud upon those who were in no respect in default. The right of Greer to claim the benefit of the security afforded by the mortgage given by his principal was a mere equity, and he cannot be allowed to assert it against the creditors under circumstances where their equity is as strong as his, and where to allow him to assert it operates a fraud upon them.

The question of variance discussed by counsel cannot be noticed, because no objection was made before verdict. We do not consider the instruction asked by the defendant and refused, as sufficiently admonishing the court or the plaintiffs that the question of variance between the declaration and proof was intended to be raised. Such objections should be explicitly and distinctly made, in order that the court may determine whether it is a proper case for amendment.

*Judgment affirmed.*