CASE No. 1116.

## WITTE v. WOLFE.

1. A married woman may contract as surety for her husband, and thereby make herself and her separate estate liable for the payment of the debt.
2. A married woman has express authority, under the act of 1871, (14 *Stat.* 325; *Gen. Stat.,* Ch. C., § 2,) to mortgage a tract of land conveyed to her sole and separate use after the passage of that act.

3. A married woman, independently of the constitution of 1868 and the act of 1871, may execute a valid mortgage of a tract of land conveyed to a trustee in trust for the sole and separate use of such married woman, and "subject in all respects to her use, disposition, *charge* and control by deed or will, by her made, in all respects and to the same extent as though she were discovert and sole."

4. Where lands are purchased by A., upon his individual credit, for the benefit of B., to be conveyed to B. when the purchase-money has been fully paid, there is a resulting trust in favor of B., and a mortgage of such lands executed by B. is valid and binding, subject to the right of A. to have the balance due on the purchase-money paid out of the proceeds of sale.

5. In February, 1874, a bond was given by A. and B. to C., in the penal sum of $12,000, conditioned that A. and B. would pay to C. the "sum of $6,000 on the first day of January next, with interest * * * and ship to C. for sale, on commissions of two and one-half per cent., 375 bales of cotton before said January 1st next, and pay, also, any balance that may then be due C. on any transactions in buying and selling cotton or otherwise on said January 1st next." This bond was secured by mortgage of lands of A. and of B. On the day before the maturity of this bond A. and B. gave their second bond to C., in the penal sum of $16,000, conditioned that A. would pay the sum of $8,000 * * * and ship 500 bales of cotton * * * and also pay to the said C. on the first day of January, 1876, any balance that may be due C. by A. on any transactions in buying or selling cotton or otherwise prior to said date last given," and this bond was in like manner secured by a mortgage of the same property. *Held*, that the first bond and mortgage were not satisfied upon the shipment of 375 bales of cotton, but that they also secured a balance of $5,567.62, due on the operations of 1874, although there were over 1,500 bales of cotton shipped, and this balance resulted from transactions in buying and selling cotton to an amount largely in excess of the penalty of the bond.

6. If B. was a surety she was not discharged from her liability on the first bond by an allowance of one per cent. return commissions, credited to A. on all the cotton shipped after the receipt of the first 375 bales, in compliance with a promise made by C. to A. at the time this covenanted number were delivered, such return commissions being according to the custom of cotton factors.

7. Nor, is she released from her liability on the second bond by a mortgage accepted by C. from B., calling for the delivery, at a future day, of thirty bales of cotton of a growing crop, as further security for a balance then due on such bond, there being no agreement for further indulgence on such indebtedness.

8. Where a debtor ships cotton to his creditor to be credited on a security which proves to have been already satisfied, the court, at the request of the creditor, may make application of the proceeds to any other indebtedness of such debtor to this same creditor.

9. A cause of action for an unsecured demand arising on contract may be united with a cause of action for foreclosure of mortgage in one complaint.

Before HUDSON, J., Fairfield, September, 1880.

Action by George W. Witte and Arnim F. Witte, doing business as partners in a cotton factorage business under the firm name of Witte Brothers, against Saling Wolfe, Sarah S. Wolfe, Simon Baruch and other defendants, who were lien creditors of the two defendants first named. The several securities and demands, upon which this action was founded, and the balances due thereon, together with other facts explaining the case, are stated in the opinion of this court.

The Circuit decree, omitting its statement of the pleadings and order of sale, was as follows:

After hearing the elaborate arguments of the counsel upon these points, I am of the opinion that the mortgages are valid liens upon the separate estate of Mrs. Wolfe. The first bond is dated February 23d, 1874. This bond is secured by a mortgage of the lands of husband and wife, or of other persons held for her. The second bond is dated December 31st, 1874. This bond matured on January 1st, 1876, and is secured by a mortgage upon the same real estate as secures the first-mentioned bond. Both these bonds and mortgages are signed by the defendants, Saling Wolfe and Sarah S. Wolfe. Now, these cotton transactions were very extensive; large balances are due thereon, and the language of the conditions of the bonds is very broad, and certainly covers whatever balances might be due thereon up to January 1st, 1876.

Subsequent to January 1st, 1876, a lien for advances during the year was given plaintiffs by the defendants, Saling Wolfe and Sarah S. Wolfe. It appears that in 1876, fifty-two bales of cotton were shipped by Saling Wolfe to the plaintiffs. The proceeds of this cotton must be applied as a credit on the indebtedness secured by this lien. The fifty-two bales netted $2,099.86.

There is no conflict as to the balance due by Mr. Wolfe; and for these balances, as reported by the referee, both he and his property, mortgaged to secure the same, are liable. But the principal contest is as to the liability under the mortgage of Mrs. Wolfe's separate property.

It was the well-established rule in South Carolina, prior to

the adoption of the constitution of 1868, that a married woman had no power to bind or charge her separate estate unless such power was expressly given her in the instrument by which such separate estate was created. *Ewing* v. *Smith*, 3 *Desaus*. 417. But in 1868, under the constitution, all this was exploded, and full power has been given her by the constitution and the act of January 27th, 1870, (14 *Stat.* 325,) to devise, bequeath and convey her separate estate; and she has also been authorized, in express terms, to make deeds, mortgages and other legal instruments. The act goes a bow-shot beyond the statutes of other States. In New York, under the New York statutes, the courts uphold the doctrine that a married woman cannot bind her separate estate by contract, unless her intention so to do be expressed in the instrument creating the charge, or may be presumed from the nature of the contract itself. But in South Carolina, a married woman has been almost if not completely emancipated. But even in other States this contract would bind her, for her intention to bind her separate estate is therein stated in express terms, and cannot be disputed. What separate estate, then, has she? Certainly the tract conveyed by F. Copes to her directly is her separate estate and in fee.

The deed from Manus Baum to Simon Baruch, trustee, contains the following clause: "But subject, in all respects, to the use, disposition, charges and control of the said Sarah S. Wolfe, by deed or will by her made, in all respects and to the same extent as though she were discovert and sole." Under this clause she has the right to mortgage the property named in this deed. She can make a valid deed thereof and a valid mortgage, and it is bound by the mortgage.

Now, as to the deed from Shaw and McCants to Dr. Baruch, individually. Dr. Baruch has testified: "I do not know from what source the money [for the cash portion of the purchase-money and the credit portion of the purchase-money of the Shaw place] was derived. Mr. Wolfe induced me to enter into the purchase as a good thing, and I left him to attend to it for me. I always felt myself bound for the money until the bond was paid. Witness did not furnish the money himself. So far as his information goes, it was derived by Mr. Wolfe

from working the places. The place purchased from James B. McCants has been paid for in the same way, but I hold my titles to the Shaw place and the McCants place, though not by any agreement with anybody, still, as security, to protect myself against the balance due on the bond of James B. McCants." Dr. Baruch also testified that "It is witness' intention, after the money is paid, to convey these lands to Mrs. Wolfe and her children."

This testimony conclusively shows that, although the titles to these lands were taken by Dr. Baruch in his own name, the property was not paid for by him; but that, as he was and is liable for the credit portion of the purchase-money, he retained the titles in his own name as an indemnity against this liability. This creates in Baruch a resulting trust in favor of either Mr. Wolfe or Mrs. Wolfe (for which we need not consider; these latter have shown the light in which they regarded these lands, by including the tracts in the mortgages, and they cannot now say that they had no right to do so). These mortgages by husband and wife create valid liens on these premises. They had a right and a power to mortgage them, and the plaintiffs have a right to have the interest of Mr. and Mrs. Wolfe sold, and when sold the purchaser will take an absolute fee-simple estate. But Dr. Baruch must be indemnified, and whatever amount he may be liable for, on account of the purchase-money of these lands, must be first provided for out of the proceeds of their sale, that the lands may be resold free from all encumbrance.

The report of the referee as to the accounting is approved, except in so far as the same is modified by this opinion, from which the following will result:

The $4,000 bond, dated February 15th, 1875, has been adjudged satisfied in the case of *Sarah S. Wolfe* v. *George W. Witte and Arnim F. Witte.* The proceeds of twenty bales of cotton, sold in 1879, and directed to be applied to said bond in the mortgage of crop of 1878, and which were applied thereto by the referee in the account by him, are no longer applicable, the said bond having been satisfied before said cotton was raised and sold. The proceeds of this cotton should, therefore, be applied as a credit to the account contracted in 1877, between

the plaintiffs and Saling Wolfe alone.    Applying them, therefore, as credits of proper dates, this account becomes extinguished on October 29th, 1879.    The credits subsequently applied to this account by the referee (being $79.14 overplus of payment of October 29th, 1879, and $540.27 paid on November 26th, 1879,) should be applied to the mortgage debts.    So, applying them as credits of proper dates, the balance due on September 15th, 1880, upon the bonds secured by the mortgages of real estate, is $12,091.73, of which $7,743,82 is secured by the bond and mortgage dated February 23d, 1874, and $4,347.91 is secured by the bond and mortgage dated December 31st, 1874, alone.

On the account secured by the lien of Saling Wolfe and Sarah S. Wolfe, dated January 7th, 1876, after applying the proceeds of the fifty-two bales of cotton hereinbefore directed to be applied thereto, there remains a balance of $1,232.85, and for this sum a judgment must go against Mr. Wolfe and Mrs. Wolfe.

I have thus disposed of the various points made before me in this case, and will now sum up my conclusions of law and fact in the manner directed by the Code of Procedure.

I find as matters of fact:

1. That the bonds and mortgages sought to be foreclosed in this action were duly executed and delivered to the plaintiffs by the defendants, Saling Wolfe and Sarah S. Wolfe, at the times and upon the considerations mentioned in the complaint.

2. That said mortgages have been duly recorded.

3. That the bond, chattel mortgage and agricultural lien dated February 15th, 1875, and sued on herein, are satisfied and discharged.

4. That the balance of $7,743.82, reported by the referee as due under the security of the bond and mortgage of date February 23d, 1874, is correct.

5. That the balance due on September 15th, 1880, under the security of the bond and mortgage of date December 31st, 1874, is $4,347.90, and that said balance is secured by said bond alone.

6. That the balance due on the account secured by the lien given by Saling Wolfe and Sarah S. Wolf, dated January 7th, 1876, and now unsecured, is $1,232.85.

7. That there is nothing due upon the account between plaintiffs and Saling Wolfe alone.

8. That the deed from Manus Baum to Simon Baruch, trustee, contains a clause in words following: "But subject, in all respects, to the use, disposition, charge and control of the said Sarah S. Wolfe, by deed or will by her made, in all respects and to the same extent as though she were discovert and sole."

9. That the Shaw place has been fully, and the Vann place partially paid for with moneys derived from Saling Wolfe, or from the income and profits of land cultivated by him, either individually or as agent for Mrs. Sarah S. Wolfe.

10. That Dr. Simon Baruch is individually liable for the unpaid balance of the purchase-money of the Vann place.

11. That Dr. Simon Baruch holds in his own name the titles to the Shaw place and the Vann place, to indemnify him against loss by reason of his liability on either place.

Upon the foregoing facts I hold as matter of law as follows:

1. That under the constitution and laws of South Carolina, the bonds and mortgages and lien given by Mrs. Sarah S. Wolfe bind her and her separate estate as amply and to the same extent and in like manner as if she were sole.

2. That the trust deed from Manus Baum to Simon Baruch, trustee, gave Mrs. Sarah S. Wolfe a legal and valid power to pledge, by way of mortgage, the property therein mentioned.

3. That the transactions of Dr. Baruch, in the purchase of the Shaw and Vann places, create a resulting trust as to those places in favor of Saling Wolfe or Sarah S. Wolfe, as the case may be, which it is unnecessary and immaterial now to inquire.

4. That the interest and estate of Saling Wolfe and Sarah S. Wolfe in the Shaw place and the Vann place were legally mortgaged by them.

5. That such mortgage is that of the fee, subject to Dr. Baruch's right to be indemnified out of the proceeds of the sale of said places, against his liability for the purchase-money thereof.

6. That the mortgages mentioned in the pleadings are valid and subsisting liens on all the premises therein mentioned and

described, except that of February 15th, 1875, upon the personal property of Mrs. Sarah S. Wolfe.

7. That as between Mrs. Sarah S. Wolfe and her husband, she may be regarded as his surety, and she is entitled to have his property first sold in exoneration of her separate estate.

8. That the mortgages given in 1878 and 1879 by Saling Wolfe were merely additional securities to the bonds referred to by said mortgages, and, as they did not extend the time of payment, Mrs. Sarah S. Wolfe, even had she been, as to Witte Brothers, a surety, was not released from her liability upon the bonds and mortgages by her given jointly with her husband.

9. That the plaintiffs allowing Saling Wolfe a return commission on the cotton shipped in excess of that stipulated in the bonds and mortgages constituted in no respect a new contract *quoad* those bonds and mortgages, and, hence, could not have the effect of releasing Mrs. Sarah S. Wolfe, even if regarded as the surety of Saling Wolfe.

I am, therefore, of opinion that the plaintiffs are entitled to a judgment of foreclosure of said mortgages, and a sale of the tracts of land embraced in the same, and a judgment against the defendants, Saling Wolfe and Sarah S. Wolfe, for the unpaid balance of the lien account of 1876.

The exceptions of Sarah S. Wolfe are copied into the opinion. The exceptions of Saling Wolfe are substantially the same as those of his wife. The defendant, Baruch, filed three exceptions. The third is the same as the eighth of Mrs. Wolfe. The others were as follows:

1. Because his Honor erred in finding as matter of law that the defendant holds the Shaw place and the Vann place under a resulting trust in favor of Mr. or Mrs. Wolfe, and that said property, standing in his own name, and held by him as his individual property, could be mortgaged by Saling Wolfe and Sarah S. Wolfe for the debt of the former.

2. Because his Honor erred in permitting any such question to be made in this action.

*Mr. S. P. Hamilton,* for appellant.

*Mr. J. H. Rion,* contra.

November 19th, 1881. The opinion of the court was delivered by

McGOWAN, A. J. On February 23d, 1874, Saling Wolfe and Sarah S. Wolfe, his wife, of Winnsboro, Fairfield county, executed to the plaintiffs their joint and several bond in the penalty of $12,000, *conditioned* for the performance of covenants, viz.: To pay $6,000 on the first of January then next, with interest thereon from date of advancement at the rate of one per cent. per month, "and ship to them for sale, on commissions of two and one-half per cent., 375 bales of cotton before said first day of January next, and pay also to said Witte Brothers any balance that may be due to them on any transaction in buying and selling cotton or otherwise on said first day of January next, without fraud or further delay," &c. This bond, which, in the case, is called *Exhibit A.*, was secured by a mortgage of real estate belonging to both Saling Wolfe and Sarah S. Wolfe, as follows: The Avick place, containing 100 acres; the Shurley place, containing 317 acres; the Weston place, containing 850 acres, and the Delleney place, containing 940 acres, belonging to Saling Wolfe; and the following four parcels, viz.: The Shaw place, containing 237 acres; the Vann place, containing 140 acres; the Leitner place, containing 100 acres, and the town lots in Winnsboro, belonging to the separate estate of Sarah S. Wolfe. The business did not stop at the amount secured by the bond, but during the year 1874 the plaintiffs advanced the sum $97,342.97, and they sold cotton for defendants which amounted to $87,097.37; this left a balance due at the maturity of the bond of $10,245.60. But reducing this by the sales of cotton, up to February 15th, 1875, there was then due $5,567.62, which was admitted by Saling Wolfe.

On December 31st, 1874, the business of that year had not been closed up, but it was known there would be a balance against Saling Wolfe and Sarah S. Wolfe, and on that day they executed to plaintiffs another joint and several bond in the penalty of $16,000, with the following conditions: "That if the above-bound Saling Wolfe, his heirs, executors and administrators, shall and do well and truly pay or cause to be paid unto the above-named Witte Brothers * * * the full and

just sum of $8,000 on the first day of January A. D. 1876, with interest thereon, as the same may be advanced by the said Witte Brothers to the said Saling Wolfe, from the dates of the advancements respectively, at the rate of one per cent. per month, computed by way of discount; and shall ship during the year 1875 to the said Witte Brothers 500 bales of cotton, to be sold by them on commission of two and one-half per cent.; and shall also pay to the said Witte Brothers, on the said first day of January, 1876, any balance that may be due by him on any transactions in buying or selling cotton prior to said date last given, without fraud or further delay," &c. To secure this bond, which is known as *Exhibit B.*, a mortgage was executed by them upon the same real estate as secured the first bond.

On February 15th, 1875, Saling and Sarah S. Wolfe executed to plaintiffs another joint and several bond conditioned for the payment of $4,000 and interest, and the shipment of 200 bales of cotton on or before January 1st, 1876. This bond was secured by a mortgage of certain chattels, horses, mules, wagons, &c., purporting to belong to both Saling and Sarah S. Wolfe, but which belonged alone to Sarah S. This bond, which is known as *Exhibit C.*, was also secured by an agricultural lien of even date given by both Wolfe and his wife. Under the security of these two bonds and mortgages last named, and the agricultural lien of 1875, the plaintiffs advanced during that year to the amount of $21,635.35, and cotton was delivered which paid the amount, except the sum of $3,853.88. These sums, with interest, were claimed by the plaintiffs in their first cause of action to be covered by the mortgage of which they prayed foreclosure and sale of the property.

On January 7th, 1876, Saling Wolfe and Sarah S. Wolfe executed an agricultural lien to secure further advances, and on February 21st, 1877, Saling Wolfe alone executed another agricultural lien to secure further advances, and on May 13th, 1878, he executed a mortgage on his crops of that year, and April 30th, 1879, another mortgage on the crops of that year, the last expressly for the purpose of further securing the past indebtedness. The balance due on these securities was claimed in the

second cause of action as a debt against Saling Wolfe and wife, but not secured by mortgage.

An action was brought by Sarah S. Wolfe against Witte Brothers to cancel the bond and chattel mortgage *C.*, upon the ground that cotton, to wit, 134 bales, shipped under lien of February 15th, which provided that cotton shipped under that lien was to be applied to the payment of the bond secured by the chattel mortgage, should be so applied to the extinguishment of said bond and mortgage.

The defendants, Saling Wolfe, Sarah S. Wolfe and Simon Baruch, trustee, resisted the recovery, and insisted that Mrs. Wolfe signed the several bonds and mortgages only as security for her husband, and that being a married woman she had not legal capacity to bind herself by such a contract, and, consequently, the bonds and mortgages, so far as she was concerned, were void and her separate property not liable. And even if she was originally bound as surety, that the course of dealing between the plaintiffs and her principal, especially in so largely exceeding the business indicated by the amounts of the bonds and mortgages, not only released her as surety, but, in effect, paid and discharged entirely the bonds and mortgages as securities. If not that, she was discharged by new agreements between her principal and plaintiffs, and, in any view, that the defendants were entitled to a credit for the $4,000 bond secured by the chattel mortgage, to which the cotton shipped should be first applied, and, if so applied, said bond was paid in full and should be eliminated from the account.

It was referred to a referee to take the testimony and state the accounts. He took much evidence, and stated the accounts substantially as related in the foregoing meagre outlines. He reported as due upon the several bonds secured by mortgage of Saling Wolfe and wife, the aggregate amount of $11,929.90; that there was due by them also upon the lien of 1876, $1,232.90, and by Saling Wolfe alone, on lien executed by him February 21st, 1877, the sum of $206.27.

The case came up before Judge Hudson on exceptions. At the same term of the court the case of Sarah S. Wolfe against Witte Brothers, to cancel the bond and chattel mortgage, was

tried. The judge decreed that the bond *C.* and chattel mortgage were, in effect, paid by the cotton which had been delivered by Saling Wolfe. In this case he confirmed the report of the referee in every respect, except as to the application of the proceeds of certain cotton, and as to that he made a small change, which he thought was made proper by the aforesaid decision in the matter of the bond and chattel mortgage, to which item more particular reference will be made hereafter. He held that the bonds and mortgages were not discharged; that Mrs. Wolfe, as well as her husband, was liable for the amount of $12,091.13, covered by the mortgages, for which he gave judgment, and ordered foreclosure by sale of all the lands embraced in them, and he also decreed against them both the sum of $1,232.85, due under lien of January 7th, 1876, but not secured. The defendants, Saling Wolfe, Sarah S. Wolfe and Simon Baruch, all appealed and filed exceptions, but the questions made can be considered under those of Mrs. Wolfe, which are as follows:

1. "That his Honor erred in finding that the bond and mortgage of February 23d, 1874, were not paid by the shipment of 375 bales of cotton, and the contract terminated on November 27th, 1874, as stated in the letter of Witte Brothers to Saling Wolfe.

2. "That his Honor erred in finding that this defendant is liable, under the bond and mortgage of February 23d, 1874, for balances against her husband, Saling Wolfe, incurred by the shipment to Witte Brothers of 1,209 bales of cotton after the termination of the contract stated in said bond.

3. "That his Honor having found that this defendant was surety for her husband, Saling Wolfe, on the bond for $6,000, dated February 23d, 1874, he erred in not finding that this defendant, as such surety, was discharged by the making of a new contract and agreement, without her consent, between Saling Wolfe, her principal, and Witte Brothers, the creditor, by the letter of the latter, dated November 27th, 1874, whereby the rate of commission allowed Saling Wolfe, of one per cent. return commission, was changed from that named in the bond.

4. "That his Honor having found that this defendant was the surety of her husband, Saling Wolfe, on the bond dated

December 31st, 1874, he erred in not finding as matter of law that the mortgage on the crop made by Saling Wolfe to Witte Brothers, dated April 30th, 1879, was a new agreement between the creditor and principal, without her knowledge or consent, by which an extension of time was granted to Saling Wolfe for the payment of said bond, and thereby this defendant, his surety, was discharged.

5. Not urged.

6. "Because his Honor erred in finding the balances against Saling Wolfe, as reported by the referee, as correct, when his decree in the case of *Sarah S. Wolfe* v. *Witte Brothers* has decided the bond for $4,000 and chattel mortgage to be paid and satisfied, and that amount is eliminated from the account of the plaintiff, and the report of the referee should have been recommitted to him to be recast in conformity with the decree in this case.

7. "Because his Honor found, as matter of law, that the defendant could bind her separate estate as surety for her husband, and this was error.

8. "Because he found that she could bind the property in Winnsboro, held under the trust deed of August 8th, 1868, from Manus Baum to Simon Baruch, without consent of her trustee.

9. "Because his Honor granted to the plaintiffs a money judgment against Saling Wolfe and this defendant on a joint contract made on agricultural lien dated January 7th, 1876, and decreed that it was a lien on her separate estate."

For the sake of clearness we will not attempt to consider the exceptions in their order, but under general heads according to their subject-matter.

*First.* The seventh and eighth exceptions deny that Sarah S. Wolfe, being a married woman, had the legal capacity to make a contract as surety for her husband, so as to make herself, or her separate estate, liable for the different bonds, mortgages and agricultural liens signed by her with her husband. In the case of *Pelzer, Rodgers & Co.* v. *Campbell & Co.*, 15 *S. C.* 581, just decided, this court held that under our present constitution and laws, a married woman may make a contract "as if she were

unmarried," and that the contract of suretyship is no exception. It is not necessary to repeat here the reasoning of that judgment, to which reference is made. In that case the married woman did not sign *as surety for her husband,* but for a mercantile firm, of which *her son* was a member, but the law applies equally in the case of surety for her husband. In some of the States, limitations on this point have been imposed upon the wife's power to contract, but none have been imposed in our State. Here a wife can contract as surety for her husband as well as for any one else, only provided that the contract is upon sufficient consideration, and not made under circumstances which would avoid any contract for duress. *Wright* v. *Remington*, 12 *Vroom* (41 *N. J.*) 48. In that case it was held that "a threat by a husband, conveyed through a payee, that he will poison himself unless his wife signs a note as surety for him, does not amount to duress, such as will avoid her contract." In the case before us there is no evidence that improper means, undue influence or illegal persuasions, threats or solicitations were made use of for the purpose of inducing Mrs. Wolfe to sign the papers; certainly there is none intimating participation in or consent to such conduct on the part of the plaintiffs.

This question does not touch the tracts of land which belong to Saling Wolfe, viz., the Avick place, the Shurley place, the Weston place, and the Delleney place. As to the other tracts it will be necessary to consider further. The act of 1870 (14 *Stat.* 325) gives the power to a married woman to contract and be contracted with as if she were unmarried, and expressly declares that "all deeds, mortgages and legal instruments of whatever kind shall be executed by her (married woman) in the same manner and have the same legal force and effect as if she were unmarried." Under this act, Mrs. Wolfe had the right to mortgage the Leitner place, which, after the passage of the above act, March 9th, 1871, was conveyed by Frederick Copes "to Sarah S. Wolfe for her sole and separate use," &c.

Mrs. Wolfe had the right to mortgage the "town lots in Winnsboro," and all the land conveyed by the deed of Manus Baum to Simon Baruch, trustee, bearing date August 5th, 1868, after the adoption of the constitution but before the passage of

the act above cited. The trusts of that deed are : that the trustee should hold " subject in all respects to the use, disposition, *charge* and control of the said Sarah S. Wolfe by *deed* or will by her made, in all respects and to the same extent as though she was discovert and sole." Without reference to the effect of the constitution, under this power she could *charge the property specifically* by mortgage, even according to the principles which were applied in this State before the constitution. " What constituted a *charge* upon the estate was simply a rule of evidence. All agree that when the wife had expressly charged the payment of a debt upon her separate estate, whether it be her own debt or the debt of another, such charge was valid and would be enforced, provided the power to do so was given by the deed." 1 *Bishop*, § 812 ; *Yale* v. *Dederer and Wife*, 18 *N. Y.* 265 ; *Reid* v. *Lamar*, 1 *Strobh. Eq.* 27 ; *Ewing* v. *Smith*, 3 *Desaus.* 418.

As to the Shaw and Vann places, the facts are as follows : Simon Baruch, at the instance of Saling Wolfe, purchased them and gave his bonds for the purchase-money, but Wolfe and wife took possession and have had the rents and profits. Baruch testified that he did not hold this property by any secret trust, but in his own name ; that he took title in his own name ; did not pay the cash or any other part of the purchase-money, but, as Mr. Wolfe had induced him to enter into the purchase as a good thing, he left him to attend to that ; did not know from what source the money was derived, but, so far as his information goes, it was derived by Mr. Wolfe from working the place ; that he holds the title to both places to secure his liability for the balance of the bond still due to McCants for the Vann place, and that as soon as all the money was paid it was his intention " to convey these lands to Mrs. Wolfe and children." Under these circumstances the Circuit Judge decided that the purchase-money was paid by Saling Wolfe from the proceeds of the crops, and that there was a resulting trust in favor of Mr. Wolfe or Mrs. Wolfe, depending upon the fact whether the money came from his or her plantations, and in either case this interest was bound by the mortgage which was executed by both, subject to the right of Baruch to have the remainder of the purchase money now due

paid out of the proceeds of sale. We cannot say that this was error either in law or fact.

*Second.* The first and second exceptions make the point that the first bond and mortgage of February 23d, 1874, were paid by the shipment of 375 bales of cotton, and the contract terminated on November 27th, 1874, and it was therefore error to decree any balance arising out of the operations of the year 1874.

The second bond and mortgage were executed on December 31st, 1874, the last day of the calendar year, but the cotton season was not then closed, and it could not be known precisely what would be the result. It was known, however, that there would be a balance against Wolfe and his wife. The referee reports as matter of fact that there was a balance due on the transactions of that year, and so far as Saling Wolfe is concerned he never denied that there was such a balance which was covered by the bond, but year after year, on various occasions and in different forms, acknowledged it.

But it is insisted that the business of 1874 went largely beyond the amount of the bond, and that as soon as it overflowed the bond and mortgage they were, in effect and by operation of law, *paid,* and should be canceled. . This must depend upon the contract. Was it the intention of the parties that the advances should all be within $6,000, and the shipment of cotton stop at 375 bales? If so, the view that the bond and mortgage must be considered paid as soon as the business went beyond them in amount would be very strong. In that case, the debt, as a balance of account, might remain, *but the security would be gone.* That, however, does not seem to be the true construction of the bond. It was not a money bond, but a bond with a penalty to secure the performance of covenants. It was not given for so much money received at the time, but to cover advances to be made at future times. That is manifest, both from the nature of the transaction and the terms of the bond itself. There are no words expressly fixing a limit to the business, and there is none unless the mention of a particular amount in the bond amounted, by implication, to such limit, which is negatived by the terms of the covenant: "*to pay, also, to said Witte Brothers any balance that may be due them on any transactions in buying*

*and selling cotton or otherwise,"* &c. Manifestly the business of buying and selling cotton was in contemplation, and the penalty of the bond seems to have been given, not to limit business to the amount therein stated, but to ensure it to that extent and to cover *any balance* which might be struck, without regard to the amount of business that produced that balance. That the bond, to the extent of its penalty, was intended as a general guaranty to Saling Wolfe in the business of buying and selling cotton.

This was certainly the understanding of Saling Wolfe himself, when, December 9th, 1874, he wrote to the plaintiffs, saying: " Now, gentlemen, if I remember correctly, when I gave the mortgage of our property to you it read in that way; if I draw more than $6,000, our property is responsible for it." Witte also testified that " all transactions were considered by plaintiffs as covered by the bonds in existence." This view is confirmed by the subsequent conduct of the parties. On December 29th, 1874, a new arrangement was entered into, and the idea that the first bond and mortgage were paid and discharged was not even suggested. On the contrary the new arrangement embraced the identical property covered by the first, and the covenant in the bond then executed was in the following words : " *Also to pay the said Witte Brothers any balance* that may be due them by him on *any transactions* in buying and selling cotton or otherwise *prior to the date last given,"* &c. This covenant, by its terms, covers a balance *then* due, as well as one which might arise after its date and prior to maturity.

In respect to this very matter of the absence of limitation in the contract, this case is not analogous to that of *Ryan* v. *Shawneetown,* 14 *Ill.* 20, cited and relied upon by the defendants. In that case certain persons, as sureties, gave a mortgage to secure a loan to the trustees of Shawneetown, " *not to exceed* $20,000." The loan was to run ten years, and the money to be used for walling the banks of a river adjacent to the lots. The bank loaned $40,000 for that purpose and took their note for it, and brought a bill to foreclose the mortgage : *Held,* That the loan was not made *in pursuance of the mortgage,* and that the sureties were not liable even for $20,000. That case did not go on the ground of *payment* by exceeding the limits but of *depart-*

*ure from the contract.* " For it may be that they would not have become responsible for any amount but for the assurance that the loan would be limited to the amount stipulated."

In this case, as we understand the contract, there was *no assurance* that the business should not go beyond $6,000, but, on the contrary, the covenant was to pay " *any balance*" that may then be due on " *any transactions*" in buying or selling cotton or otherwise. *Conway* v. *Cunningham*, 6 *S. C.* 351; *Greer* v. *Bush*, 57 *Miss.* 575; *S. C.*, 9 *Reporter* 473.

*Third.* The third and fourth exceptions insist that if Mrs. Wolfe was liable, she was merely surety for her husband, and, as such surety, she was discharged by certain transactions of the plaintiffs with her principal, Saling Wolfe. It is not perfectly clear that Mrs. Wolfe was merely a surety and not a joint contractor. The bonds in form are joint and several. In the first the covenants were to be performed by both of them, and in the second by Saling Wolfe alone. At least part of the money advanced was to support the family and make crops on the different plantations, some of which, as well as some of the stock, belonged to Mr. and some to Mrs. Wolfe, and the crops followed the ownership of the property. But assume that she was only surety. We have already seen that a married woman may be surety for her husband, and how does it appear that she was discharged?

I. It is insisted that Mrs. Wolfe was released from liability on the first bond by a *new agreement*, without her consent, between Saling Wolfe, her principal, and the plaintiffs, " by the letter of November 27th, 1874, whereby the rate of commissions allowed Saling Wolfe, of one per cent. return commissions, was changed from that named in the bond." The letter referred to is in these words : " We would here mention that we have divided the lot I M I so as to render your account sales exactly for 375 bales cotton, on which full commissions are to be charged, after which a return commission will be credited to you." It is true that " any agreement between the creditor and principal which varies essentially the terms of the contract by which the surety is bound, without the consent of the surety, will relieve him from responsibility." But assuming that the letter as to

S

return commissions was an agreement, we fail to see that it touched the terms of the contract. The express contract only related to 375 bales, " and ship to them for sales, on commissions of two and one-half per cent., 375 bales of cotton." This contract was complied with to the very letter. Beyond that there was no express stipulation as to commissions, and it was no violation of the contract to make a reduction of commissions in accordance with what was proved to be the usual custom and practice in such cases.

II. It is also insisted that Mrs. Wolfe was relieved from liability on the *second bond* by the crop mortgage executed by Saling Wolfe to plaintiffs, April 30th, 1879, which it is alleged was " *a new agreement,* without her knowledge or consent, by *which an extension of time was granted for the payment of said bond.*" Saling Wolfe and his wife had given to the plaintiffs a lien on their crop for the year 1876, and Saling Wolfe alone had executed a lien for the year 1877, and he also executed a crop mortgage for the year 1878, and on April 30th, 1879, executed the crop mortgage, which, it is alleged, extended the time of payment of the money due and covered by bond *B.* This paper was signed only by Saling Wolfe. It was given expressly as further security for the debt. It mentioned nothing about indulgence, but it is insisted that such was the necessary effect of the following provision in it, viz.: " And it is the true intent and meaning of the parties to these presents that if the said Saling Wolfe do and shall well and truly deliver or cause to be delivered unto the said Witte Brothers thirty bales of cotton, *or pay the said debts or sum of money aforesaid, with the interest thereon, if any shall be due, according to the true intent and meaning of said bond and these presents,* then this deed of bargain and sale shall cease, determine, and be utterly void," &c. The defendant contends that the plaintiffs, by accepting this lien to deliver thirty bales of cotton in October, November and December, 1879, *agreed* to indulge on the debt, and, by implication, bound themselves not to sue until that time.

Mere indulgence will not discharge a surety. In order to have that effect there must be an *agreement* for indulgence between the creditor and principal debtor, *obligatory on the*

*creditor*, and for a certain or definite period. *Parnell* v. *Price*, 3 *Rich.* 121. We see here no evidence whatever of such agreement. It was only an effort to secure something on the debt. The plaintiffs could have sued at any moment.

*Fourth.* The sixth exception insists that the $4,000 bond, which was decreed paid in the case of *Sarah S. Wolfe* v. *Witte Brothers*, should have been eliminated from the account of the plaintiffs, and the report of the referee should have been recommitted and recast in conformity with that decree.

After the referee had made his report on the accounts, Judge Hudson decreed that the bond for $4,000 and the chattel mortgage to secure it had been discharged by the application to this bond of the proceeds of certain cotton which had been sent forward. At first view it would seem that this would necessarily change the account of the referee, so that the amount of the first bond should be set down as a credit to the defendants, or, as the defendants say, be "eliminated from the account;" but when we look to the manner in which the accounts are stated we will see that this is not the case.

The advances made on *B.* and *C.* were stated in one account in the view that the latter was cumulative security for the former. The bonds were not, as in the case of simple money bonds, the measure of the amount due, but the limit to the amount which could be recovered. The *actual advancements* were the debt, and the bonds were only the securities which covered it. The referee had stated all the advancements before bond *C.* was declared paid, and therefore the only effect of striking out that bond was to discharge one of the securities which covered the aggregated advances, *leaving them as already stated.*

That decree, however, did slightly affect the credits. The proceeds of twenty bales of cotton had been placed, by direction of defendants, under bond *C.*, but that was observed after it appeared that said bond had been discharged long before, and as there was then no direction as to how the proceeds of that cotton should be applied, the plaintiffs claimed that they had the right to have it applied *first* to the extinguishment of the small amount found due by Saling Wolfe individually. The Circuit judge allowed the claim, decreed nothing against Saling Wolfe indi-

vidually, and increased thereby, to a small extent, the decree against Saling Wolfe and wife. We cannot say this was error. In the absence of direction by the debtor the creditor may direct the application of payments.

The decree for $1,232.85 against Saling Wolfe and wife upon the agricultural lien of 1876 is a simple judgment on money demand, and not covered by the mortgages. We see no reason why, under the code, that cause of action could not be united with one for the foreclosure of the mortgage against the same parties.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

SIMPSON, C. J., and McIVER, A. J., concurred.