R. P. TANSEY, Appellant, v. A. N. PETERSON *et al.*,
Appellees.

Contract to Indorse Draft: CONSTRUCTION. Where the defendants
had guaranteed a draft payable in sixty days, with interest at seven
per cent., drawn by B., for wool sold to a corporation, of which they
were the directors, their indorsement being as follows: "We hereby
guarantee the payment of the within draft, and waive notice of non-
payment and protest;" and they agreed that if B. would ship certain
other wool to the corporation, and draw upon it for the price thereof,
at sixty days, they would "indorse the draft as heretofore," *held*,
that this did not bind them to indorse a draft bearing interest; the
words "as heretofore" having reference only to the form of the
indorsement, and not to the amount or rate of interest of the draft.

*Appeal from Chickasaw District Court.*—HON. L. O.
HATCH, Judge.

THURSDAY, MAY 25, 1893.

ACTION at law to recover of the defendants for the
failure to guarantee the payment of a draft drawn
by the plaintiff's assignor on the Nashua Union
Woolen Mill Company. It is averred in the petition
that the said company is a corporation, and that the
defendants are directors thereof, and that previous to
drawing said draft the said defendants had promised
and agreed that they would indorse their personal
guaranty upon said draft, and that they failed and
refused to perform said undertaking, by which the
plaintiff's assignor failed to collect the said draft.
There was a demurrer to the petition, which was sus-
tained, and the plaintiff appeals.—*Affirmed.*

*Boies, Couch & Boies*, for appellant.

*Ellis & Ellis* and *A. G. Lawrence*, for appellees.

ROTHROCK, J.—As the question to be determined
arises upon the ruling of the district court upon a

demurrer, it will be necessary to set out the substance of the petition.

It appears therefrom that the Nashua Union Woolen Mill Company is a corporation doing business at Nashua, in this state. It was engaged in the purchase of wool, and the manufacture and sale of woolen goods. S. Bienenstok & Co., were a partnership doing business in the city of St. Louis, and on December 3, 1888, they addressed a letter to the woolen mill company, of which letter the following is a copy:

"ST. LOUIS, December 3, 1888.

"*Nashua Woolen Mill Co., Nashua, Iowa:*

"Your favor of the first inst. at hand, and contents carefully noted, for which you. have our thanks. We have expressed to you to day one package wool, lot 8, representing about 16,000 lbs., good, strict, selected, and medium. Price 22 1-2 cts. On receipt of sample please let us hear from you.

"Yours, very respt.,

"S. BIENENSTOK & Co."

One J. E. Noble was an agent and employee of the woolen mill company. On the fifth day of December, 1888, Noble answered said letter, as follows:

"NASHUA, IOWA, December 5, 1888.

"*S. Bienenstok & Co.*

"GENTS:—We have your favor of December 3, and have noted the contents. If your wool, lot 8, is as good as the sample sent, we can use it at price named, and you may ship it, say four to five thousand pounds, so we can try it. You can draw on B. L. at sixty days, and our directors will indorse draft as heretofore, and will see it paid promptly when due. If that is not satisfactory, you will wire us on receipt hereof, and, if it is, please ship at once. Yours, truly,

"NASHUA UNION WOOLEN MILL Co.

"J. E. NOBLE, Manager."

VOL. 88—35

Noble was authorized by the defendants to pledge and offer the credit of said defendants in the purchase of wool to be used and worked up in the woolen mill, and to write the letter, and make the agreement and order in said letter contained. Prior to writing the last above letter, the said Bienenstok & Co. had sold and shipped to the woolen mill company a quantity of wool, and had drawn on the woolen mill company therefor, at sixty days from date of shipment, for the contract price of said wool, together with interest thereon for sixty-three days, at the rate of seven per cent. per annum; and the then directors had made and signed the following indorsement on the said draft: "We hereby guaranty the payment of the within draft, and waive notice of nonpayment and protest." On the seventh day of December, 1888, Bienenstok & Co. shipped to the woolen mill company five thousand, nine hundred pounds of wool, which were as good as the sample referred to in the letter offering to make the sale. The woolen mill company refused to accept a larger quantity of wool than was ordered, and re-shipped a part of it to the consignors, but retained and converted to its use between four thousand and five thousand pounds. After the part of the wool was so returned, Bienenstok & Co. drew their draft on the woolen mill company for the amount of wool retained by it, at the contract price therefor, together with interest, at the rate of seven per cent. per annum, for the period of sixty-three days. The following is a copy of said draft:

"*S. Bienenstok & Co.*

"$1,117.36.          St. Louis, December 7th, 1888.—

"Sixty days after date pay to the order of Mechanic's Bank, eleven hundred, seventeen and thirty-six one-hundredth dollars, value received, and charge to the order of S. Bienenstok & Co. To the Nashua Union Woolen Mill Co., Nashua, Iowa."

Said Bienenstok & Co., about the time of drawing this draft, demanded of defendants, and each of them, that they guaranty the payment thereof, by indorsing thereon a guaranty, similar to that indorsed upon the former draft drawn by them upon the woolen mill company. The defendants, and each of them, refused to indorse the draft, and, although it was accepted by the woolen mill company, no part of it has been paid. The plaintiff is assignee of the claim, and the owner and holder thereof. The demurrer is based upon several grounds. They are all to the effect that the transaction between the parties created no binding obligation upon the defendants to indorse that draft presented to them for their written guaranty.

The contract or agreement to guaranty the draft was explicit, in this: That it limited the shipment to four or five thousand pounds, and it required that the draft should be on "B. L." at sixty days. The letters "B. L." stand for "Bill of Lading." It was not intended by the letter written by Noble that the draft should be written on the bill of lading. It merely meant that the usual course should be pursued in this commercial transaction; that is, that the draft should accompany the bill of lading. The defendants were under no obligation to guaranty a draft for more than five thousand pounds, and they had the right to require that the draft should be presented for their guaranty promptly, and upon the delivery of the wool. It may be that, as part of the wool was returned, and a draft forwarded for a quantity within the terms of the order for wool, the fact that more was shipped in the first instance than was ordered was not material. It is not necessary to decide that question, because, in our opinion, the defendants were not required to indorse the draft for another reason, which we will now consider.

Conceding that the letter written by Noble was binding on the defendants, it was no more than author-

ity to draw at sixty days for the price named. There is no provision in the offer for interest at seven per cent., or in any other amount. Drawing at sixty days means payable 'in sixty days, and, if interest is not named, the instrument draws no interest. It is claimed that the statement that the draft would be indorsed by the directors as heretofore should be held to be an obligation to pay seven per cent. interest, because interest at that rate was included in the previous transaction. It appears to us that the reference to the former draft can not be allowed to have that effect. Indorsing "the draft as heretofore" has reference to the form of the indorsement, and not its amount or the rate of interest. This, it appears to us, is apparent from the form of the indorsement. It is a full guaranty of payment, and a waiver of notice of nonpayment and protest. The case is fully within the rule announced by this court in the case of *Lindley v. First Nat. Bank*, 76 Iowa, 629.

The judgment of the district court is AFFIRMED.