The Springer Lithographing Company, Appellant, v. H. C. Graves, Appellee, and Edwin Travers, Defendant.

**Guarantor: release.** One who guarantees that an account which does not draw interest will be paid as goods are shipped upon it, is released if a note with interest due in the future is taken from the buyer for the amount due on account, unless the guarantor consented to such arrangement.

**Same.** Such consent is not shown by letters from the guarantor which, in substance, ask that the buyer be given reasonable delay and that the seller continue to use diligence in collecting.

**Guaranty.** A guaranty that a buyer will take and pay for goods proposed to be furnished him under a contract by which the goods are all to be manufactured and delivered within a specified time, creates no liability unless all the goods are delivered within such time.

**Acceptance.** Facts stated upon which a finding below that a guaranty was not accepted will not be disturbed.

**Practice Supreme Court.** An appellate court will, on appeal from a judgment in support of which no findings of fact or law were filed by the trial court, only determine whether any of the causes of actions or defenses pleaded are sustained by the evidence.

*Appeal from Pottawattamie District Court.*—Hon. W. S. Lewis, Judge.

Monday, January 27, 1896.

Action at law upon a contract of guaranty executed by appellee, Graves. The case was tried to the court without a jury, and judgment was rendered dismissing plaintiff's petition. Plaintiff appeals.— *Affirmed.*

*Leonard Everett* and *J. J. Stewart* for appellant.

*Stone & Dawson* for appellee Graves.

DEEMER, J.—Appellant is a corporation engaged in the manufacture of posters, and other fine printing and lithographing, doing business in the city of New York. One John Springer is its president and manager. The defendant Travers is a theatrical manager, and, at the time in question, was the proprietor of a company which was playing what is known as the "Private Secretary." In the spring of 1891, Travers was in negotiation with appellant for the printing of posters for his dramatic company, and on June 4, 1891, defendant (and appellee) Graves who is a resident of Council Bluffs, addressed to John Springer the following letter: "H. C. Graves & Sons, Council Bluffs, Iowa, June 4, 1891. Mr. John Springer, New York City— Dear Sir: I will insure that Mr. Edwin Travers will take of you what paper and printing he may need for his play, the 'Private Secretary,' and pay for the same, from week to week, as he may need it. Yours, very truly, H. C. Graves."

This letter reached Springer in due course of mail, and on June 9, defendant Travers gave plaintiff the following order:

"The Springer Lithographing Company, 548–550 West Twenty-third Street, New York, N. Y.

"New York, June 9, 1891. Dear Sirs: You will please execute for me the following described work: [Here follows list.] The same to be delivered in the city of New York on or before August 20, 1891. And we hereby agree to take and pay for all of said work on or before June 1, 1892, and to pay for the same as delivered. [Signed] Edwin Travers."

On the same day the following letter was addressed to appellee, Graves, by John Springer, President:

"New York, June 9, 1891. Dear Sir: We herewith hand you our regular form of guaranty, which please execute and return. Mr. Travers has, no doubt, written you concerning this matter. Yours, etc., John H. Springer, Pr.

"H. C. Graves & Sons, Council Bluffs, Iowa."

Inclosed with this letter was the contract of guaranty referred to therein. This last writing was not executed or returned by Graves. But appellant, shortly after the receipt of the order, began shipping the posters which had been ordered by Travers, and continued to send them, day after day, in small amounts, to the different towns and cities along the route of the theatrical company. No further communication was had between appellant and Graves until January 23, 1892; and, in the meantime, plaintiff had shipped to Travers, on his order, goods to the amount of two thousand seven hundred and forty-five dollars and sixty-four cents, and had received on account thereof the following amounts: August 12, 1891, two hundred dollars; September 14, two hundred dollars; September 30, two hundred dollars; October 8, two hundred dollars; November 2, two hundred dollars; November 28, one hundred dollars; December 29, one hundred dollars. On January 23, 1892, Graves wrote appellant as follows:

"I write to say that I will not insure Mr. Edwin Travers to pay for more printing or paper after this date."

On January 26, 1892, Travers paid one hundred and fifty dollars more on the account, and on February 4, was indebted to appellant in the sum of one thousand three hundred and ninety-five dollars and sixty-four cents. On the last-named date, appellant answered Graves' letter as follows:

"New York, Feb. 4, 1892. Dear Sir: We are in receipt of yours of Jan. 23, and inclose you herewith statement of the Travers account; showing balance due us, $2,666.47, of which we have delivered him goods to the amount of $1,395.64, and have goods on hand amounting to $1,270.83. We would be pleased to have your check by return mail for the amount of the goods delivered. Hoping you will give the matter your immediate attention, we are, yours, etc., The Springer Lithographing Co., J. A. H.

"H. C. Graves, Esq., Council Bluffs, Iowa."

And on the fifteenth day of February it sent him the following telegram:

"New York, Feb. 15, 1892. H. C. Graves, Care H. C. Graves & Sons, Council Bluffs, Ia.: Have you sent remittance, account Travers, or will you honor draft for one thousand dollars? The Springer Lithographing Co."

To this Graves replied that he would not honor draft, and on the seventeenth wrote the letter which is set out under that date, in the fourth division of this opinion. In response to further demands made by appellant, Graves, on March 20, wrote the letter which is also set out in the fourth division of this opinion. The appellant continued to ship the posters ordered by Travers, and received from him a further payment of one hundred and fifty dollars on February 15, 1892. On May 1, 1892, plaintiff accepted from Travers his promissory note for the sum of one thousand two hundred and twenty-two dollars and thirty-seven cents,—the balance claimed to be due on account. This note was due seven months after date, and drew interest at the rate of six per cent. Travers paid five hundred dollars more on June 13, 1892. Appellee had no notice or knowledge that a note had been taken from Travers until about the time of the maturity of the same, when demand was made upon him for its

payment. Graves refused to pay the account or any part of it; and plaintiff then commenced this suit to recover for all the goods manufactured and shipped, as well as for goods manufactured but not delivered, and claimed a balance due of one thousand two hundred and twenty-two dollars and thirty-seven cents, with interest on the same for seventeen months at the rate of six per cent. The action was brought upon the account (not upon the note), and the defendant's alleged guaranty of date June 4, 1891. Travers was made a party, but was not served with notice, nor did he make any appearance to the suit. Appellee, Graves, admitted the making of the alleged instrument of guaranty, but alleged that neither plaintiff nor John Springer ever gave him notice of its acceptance. He further pleaded that the instrument of guaranty was not made to appellant, or for its benefit, but was personal to John Springer, and further avers that he countermanded the same on January 23, 1892, and that, at the time of the countermand, appellant had been fully paid for all goods sold or delivered to Travers up to that time. He also pleaded that on February 4, appellant had shipped to Travers goods to the amount of one thousand three hundred and ninety-five dollars and sixty-four cents, and had received from him the sum of one thousand three hundred and fifty dollars, and that appellant at this time recognized the revocation of the guaranty, and agreed that appellee should be bound for only the balance due at that time. Appellee further pleaded that appellant did not comply with the terms of the guaranty, on its part, but instead of requiring Travers to make payment from time to time, as required by the guaranty, permitted Travers to remain in default, without the knowledge of appellee, and continued to ship and deliver goods to Travers, without requiring or demanding payment in accordance with the terms of the guaranty, until

the aggregate had amounted to a large sum; that appellant did not inform appellee of the failure of Travers to pay for each shipment of goods as the same were delivered, but, in violation of the terms of the guaranty, continued to ship and deliver him posters from time to time without requiring payment therefor; that, in violation of the terms of the guaranty, appellant extended credit and further time to Travers from time to time without the consent of appellee; and that on May 1, a settlement was had between appellant and Travers, and, in violation of the terms of the guaranty, appellant extended the time of payment of the balance due, and accepted from Travers the note before referred to, and thus further extended the time of payment, without the knowledge or consent of appellee. All other allegations of appellant's petition were denied by the appellee. On these issues the case was tried to the court, and a judgment was rendered dismissing the plaintiff's petition, and plaintiff appeals.

I. The court below made no findings of fact or conclusions of law, but dismissed plaintiff's petition, and taxed the costs to it. Consequently we are to determine whether any of the defenses pleaded are sustained by the evidence.

It is first insisted by appellees' counsel that the guaranty sued on was never accepted or acted upon by the plaintiff. This is purely a question of fact and, if there is nothing else in the case to sustain the judgment of the court below, we think it can be planted upon the proposition that there is such a conflict in the evidence, or the inferences to be drawn therefrom, on this branch of the case, as that we cannot interfere.

The letter of guaranty, dated June 4, 1891, was addressed to and forwarded to John Springer, at New York City. Travers gave his order June 9. On the ninth of June, "John H. Springer, Pr." sent to Graves

& Sons the letter hereinbefore set out, inclosing therewith a form of guaranty, for Graves & Sons to sign, to the Springer Lithographing Company.

There is nothing in the evidence showing, or tending to show that Graves knew that Springer was the president or manager of the plaintiff, or that he intended any one to act upon the guaranty, other than the person to whom it was addressed. Neither Graves, nor Graves & Sons made any answer to the letter of June 9, 1891; but the plaintiff proceeded to fill Travers' order, as it says, relying upon the guaranty dated June 4. It is evident that this letter reached plaintiff before the ninth of that month; and, if it did, it is quite manifest that plaintiff did not rely upon it, or if it did, Graves was justified in believing, when he received the letter from plaintiff dated June 9, that it did not rely upon it. And, as neither he nor his firm signed the blank form sent them for execution, the plaintiff did not rely upon it. It is true that the officers and agents of plaintiff say they relied upon the guaranty in suit before accepting the order from Travers, but their statements are not conclusive. If they received it before June 9, as the court may well have found they did, then their conduct in sending the blank form for Graves & Sons to sign, after the receipt of the one dated June 4, clearly shows they did not rely upon the first guaranty, but rather upon the hope that Graves & Sons would sign the one dated June 9. If they did not receive it until after June 9, then it is apparent they did not rely upon it in selling the goods to Travers; for they closed their contract with him on this day, and there is, so far as shown, no consideration for a subsequently received guaranty.

II. We are not to be understood as indicating that these would be our conclusions, had we to try the case anew. Our thought is that the court below

may have found that the guaranty in suit was never accepted or acted upon by the plaintiff; and, if this was its finding, we cannot interfere.

III.   On May 1, 1892, plaintiff accepted the note of Travers for the amount it claimed to be due.   This note drew six per cent. interest, and was due in seven months from date.   It had a consideration additional to the account to support it.   It included interest on the account, which could not have been collected at law, and provided for the payment of interest, which the account did not bear, and also included interest on goods which had not been delivered at the time the note was executed.   Now, without saying that a new consideration is needed to support an agreement for an extension of time which will release a guarantor, it sufficiently appears in this case that there was a sufficient additional consideration to support the agreement to extend the time of payment of the account until December 1, 1893; and this released Graves, even if it be conceded that he was a guarantor, unless it be shown affirmatively that he consented to the extension.   *Manning v. Alger*, 85 Iowa, 617; (52 N. W. Rep. 512).

IV.   It is argued by appellant's counsel that Graves consented to this extension, and the following letters are relied upon in support of the claim:

"Council Bluffs, Ia., Feb. 17, 1892.  Springer Lithographing Co., New York, N. Y.—Gents: Your favor of the 4th inst., came just as I was leaving for a trip in Nebraska, and did not get time to answer it before going, and, on return, find your wire here, and have made reply to that by wire.   The statement which you sent is probably plain, taken in connection with the one sent Mr. Travers January 13th; but I never saw that statement, and consequently this one is rather indefinite and incomplete.   Will you kindly make out a new statement, and send me, showing an

itemized account of the paper furnished and shipped out for Mr. Travers up to the 23d of January, from beginning of business, and also the different amounts of money you have received from him from time to time since you begun business with him? Also, please give an account of the money that he has sent you since you got the $150.00 for which you have given him credit on January 26th. I will not honor any draft on this account, and shall expect you to give Mr. Travers time and opportunity to pay you before calling on me for any money. Yours, very truly, H. C. Graves."

"Council Bluffs, Ia., March 20, 1892. Springer Lithographing Co., New York, N. Y.—Dear Sirs: Your favor at hand regarding the Travers bill, and, in reply, would say, as I have written you before, that it will be useless to make a sight draft on me, as I will not honor any draft on the account. It is not customary to call on one giving security for a bill until at least a reasonable opportunity has been allowed the original maker of the bill to raise the money for it. No effort has been made on your part to collect this account from the original party, nor do you seem disposed to give him any time or chance to raise the amount due you, even though he has written you that he has the promise of the money soon to liquidate the whole of the bill. I have also written you that I was satisfied that Travers had the money in view to pay your bill, and still you urge me into a premature payment, not only for that part of the bill for which I am holden for, but that part of it for which I am not responsible. You will not forward your interests in this matter by getting into too great a hurry over it, and I would ask you, as I have before, to give Travers a reasonable chance to pay the bill before calling on me for it, and will say, too, that I do not intend to be forced into paying any part of it until he had such a chance. Yours, respectfully, H. C. Graves."

The exact statements relied upon in these letters are: "I shall expect you to give Travers time and opportunity to pay," found in the letter of February 17, 1892, and "I will ask you, as I have before, to give Travers a reasonable chance to pay the bill, and I do not intend to be forced into paying any part of it until he has had such a chance," in the letter of March 28, 1892. We have set out the whole of the letters, that we may better understand just what effect should be given these particular statements. We do not think these statements of Graves can be properly construed to mean a request of plaintiff to change the period of performance, or to make a new and binding contract with Travers which would prevent their taking steps to enforce their account until the expiration of the time fixed in the new contract. Graves seemed to have no doubt of the ability of Travers to pay the account in a short time, and was insisting that plaintiff should use reasonable efforts to collect from the principal, and give him a reasonable time and opportunity to pay before calling upon him (Graves). This is far from consenting to the making of a valid and binding contract, changing the date of performance from June 2, 1892, to Decemcer 1, 1892. The reason why a guarantor is released by a valid agreement extending the time of payment is because it is an alteration of the contract for which the guarantor is responsible. He is bound only by the terms of the contract guaranteed, and, if these are varied without his consent, it is no longer his contract, and he is not bound by it. We do not think there was any request or agreement here to alter the old contract, or to change the time of payment as therein fixed. Reasonable delay and continued diligence are all that seem to have been demanded. But, aside from all this, there was not only a change in the contract by reason of extension

of time, but also a change in the amount due thereunder, as we have before stated. The guaranty was to the effect that Travers would take and pay for the goods from week to week as the same were needed, and the original contract was that Travers should take and pay for the work as the same was delivered, and for all of it before June 1, 1892. Delivery of the goods before June 1, 1892, was essential to a liability. But, by the terms of the note, Travers agreed to pay for the goods which had not been delivered, and also agreed to pay interest on the amount of the same from the time of the execution of the note. He also agreed to pay interest on the whole account, which was not contemplated in the original contract with Travers, and so avoided the contract of guaranty, even if it ever had an existence. Brandt, Sur., section 379. No claim is made that these changes were consented to.

We reach the conclusion that the district court may have found for appellee, Graves, on either of the propositions suggested in this opinion; and as we must presume in favor of the action of the trial court, and assume that it based its conclusions on some tenable ground, it follows that its judgment should be AFFIRMED.