L. SCHOONOVER v. OSBORNE BROS., WILLIAM M. OSBORNE, LEWIS D. OSBORNE, and DAVID OSBORNE, Appellants.

Guaranty: CONSTRUCTION. Under a guaranty of payment of money
1 to be advanced by a firm of two members, the guarantor is not
2 liable for advances made by one of them after he succeeded to
  the firm business, though such change does no harm to the
  guarantor.

ASSIGNABILITY. A mere offer of guaranty to a particular firm, which
3 is inoperative until acted on by the firm, is unassignable.

108 453
109 331

108 453
s111 142
111 147

108 453
f112 456

108 453
120 327

108 453
f138 177

APPLICATION OF PAYMENTS. Where an open, running account with a firm is continued unchanged with a member who buys the interest of his co-partner and continues the business, the rule that payments on such an account will be applied to satisfy the oldest items thereof applies to payments made thereon to the firms' successor

Judgments: SATISFACTION. Conveyance by a judgment debtor of his equity of redemption in land sold under an execution issued thereon, and redemption by his grantee, is not a satisfaction of the judgment, or recognition of its validity by the judgment debtor.

Account Stated: INTEREST. Where customers of a bank receive their pass-book, knowing that charges for interest are made their in, and make no objection thereto, the balance shown is in the nature of an account stated; and the interest charges can no more be impeached than if they had been paid, and an action brought to recover them.

LEVY OF ATTACHMENT: Estoppel. Where defendants whose property is attached file counterclaims based on a wrongful levy of attachment, and the sheriff takes manual possession, and continues to hold the property until the trial, neither party will be heard to say that there was no valid levy because notice of the attachment was not served.

SUFFICIENCY. The return of a writ of attachment recited that defendant was not found within the county, and it further appeared that, four days after the levy was made both on rea and personal property, notice of the levy on the real estate was served on him. Held, that the levy was sufficient, both on his real and personal property, so far as notice was necessary to its validity.

*Appeal from Jones District Court.*—HON. W. G. THOMPSON, Judge.

THURSDAY, MAY 18, 1899.

ACTON against defendants, Osborne Bros., William M. Osborne, Lewis D. Osborne, and David Osborne, on a promissory note, and for the amount of an account against Osborne Bros., William M. Osborne, and Lewis D. Osborne, which it is claimed defendant David Osborne guarantied. The action was aided by attachment, which it is claimed was levied upon all the property of the defendants. Defendants Osborne

Bros., William M. Osborne, and Lewis D. Osborne pleaded usury, and also a counterclaim on the attachment bond. Defendant David Osborne denied the allegations of the petition; alleged that, if he signed the note and guaranty bond sued on, he was not in his right mind when he did so, and that there was no consideration therefor; and further alleged that he made no guaranty to plaintiff, but that his guaranty, if any, was to the firm of Shaw & Schoonover. He also alleged that his liability on the guaranty, if any, has been extinguished by payment of the principal obligation, and further pleaded a counterclaim on the attachment bond. On the issues thus joined the case was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of thirty-two thousand and forty-six dollars and sixty-four cents. Defendants appeal.—*Affirmed* in part, and *reversed* in part.

*Sheean & McCarn, M. W. Herrick, F. O. Ellison* and *Jamison & Smyth* for appellants.

*Remley, Ney & Remley* and *Ercanbeck & Lawrence* for appellee.

DEEMER, J.—Prior to June 28, 1894, Shaw & Schoonover was a co-partnership consisting of W. T. Shaw and plaintiff, doing a banking business in the city of Anamosa, Iowa. On that day the firm was dissolved, and plaintiff purchased, and became the sole owner of, the assets of the firm. Osborne Bros. is also a co-partnership, engaged in the livery business, and in the buying and selling of stock. Its members were William M. and Lewis D. Osborne. This co-partnership had been doing business with the firm of Shaw & Schoonover for many years prior to its dissolution, and continued to do business with plaintiff thereafter, and until the commencement of this suit. The note on which the action in part is based is for ten thousand dollars, and was executed by Osborne Bros. and David Osborne, the other defendant, on the first day of January, 1891. The account which is the

other part of plaintiff's cause of action is for money advanced Osborne Bros. by Shaw & Schoonover, and by Schoonover individually, covering a period of years from August 5, 1882, down to August 5, 1896, and the balance claimed to be due is seventeen thousand two hundred and six dollars and thirty-one cents. Plaintiff seeks to charge defendant David Osborne with the payment of this account by reason of the following instrument of guaranty: "Anamosa, Iowa, May 25th, 1894. I hereby agree to be security to Shaw & Schoonover for whatever sum of money they have, or may hereafter, let my sons, Osborne Brothers, have to use in their business. David Osborne." The account covers interest items amounting to nearly eleven thousand dollars, which it is claimed were charged from time to time on daily balances, with the knowledge and consent of Osborne Bros. These charges were made at the rate of ten per cent. until the legal rate by contract was changed to eight and after that at eight per cent. There never was any written agreement by Osborne Bros. to pay any rate per cent. as interest. The account that Shaw & Schoonover had with Osborne Bros. was never closed, but was continued after plaintiff succeeded to the interests of his firm just as it had been prior to that date. Osborne Bros. were charged with checks drawn on the bank, and with interest, and credited with the deposits, just as if there had been no change in the membership of the banking firm. After Schoonover succeeded to the business of that firm, Osborne Bros. deposited more than twenty thousand dollars, which was credited to their account. At the time of the dissolution of the firm they were indebted to it in the sum of sixteen thousand five hundred and eighty-five dollars and eighty-five cents, as shown by the books of the bank. Defendant David Osborne asked instructions to the effect that, if the jury found his mental condition was such at the time he signed the note and guaranty that he did not know what he was doing, their verdict should be for him. He further requested

the court to charge that he was not liable on the guaranty for money advanced by plaintiff, and that, if Osborne Bros. made payments on their account after the dissolution of the firm of Shaw & Schoonover which equaled or exceeded the amount due that firm at the time of its dissolution their verdict should be for him, in so far as the account was concerned. Some other instructions were asked, which it is not necessary to refer to at length. The court refused these instructions, and charged the jury that plaintiff was entitled to rely on the letter of guaranty, and that David Osborne was responsible to him for the amount of his account against Osborne Bros.

As there was no evidence of David Osborne's mental incapacity, the court was right in not submitting that question to the jury. The other propositions are of more difficulty; and the first is, is defendant David Osborne liable to plaintiff on a guaranty made to Shaw & Schoonover? Announcement of a few elementary principles of law will help to solve this question: A contract of guaranty or suretyship is said to be *strictissimi juris,* and one in which the guarantor has the right to prescribe the exact terms upon which he will enter into the obligation, and to insist on his discharge if those terms are not observed. It is not a question whether he is harmed by a deviation to which he has not assented. He may plant himself on the technical obligation: "This is not my contract. '*Non haec in foedera veni.*'" *Barns v. Barrow,* 61 N. Y. 39; *Kingsbury v. Westfall,* 61 N. Y. 356; *Fellows v. Prentiss,* 3 Denio, 512; *Allison v. Rutledge,* 5 Yer. 193; *Bussier v. Chew,* 5 Phila. 70; *Penoyer v. Watson,* 16 Johns. 100. "A rule never to be lost sight of in determining the liability of a surety or a guarantor is that he is a favorite of the law, and has a right to stand on the strict terms of his obligation, when such terms are ascertained. This is a rule universally recognized by the courts, and is applicable to every variety of circumstances." 1 Brandt

Suretyship (2d ed.), 134, 135; *People v. Chalmers,* 60 N. Y. 154; *State v. Churchill,* 48 Ark. 426 (3 S. W. Rep. 352, 880). Again it has been said: "A surety or a guarantor usually derives no benefit from his contract. His object generally is to befriend the principal. \* \* \* The guarantor is liable only because he has agreed to become so. He is bound by his agreement, and nothing else. \* \* It has been repeatedly decided that he is under no moral obligations to pay the debt of his principal. Being then bound by his agreement alone, and deriving no benefit from the transaction, it is eminently just and proper that he should be a favorite of the law, and have a right to stand on the strict terms of his obligation. To charge him beyond its terms, or to permit it to be altered without his consent would be, not to enforce the contract made by him, but to make another for him." In applying these rules courts have usually held that a guaranty addressed to a particular person can only be acted upon and enforced by that party. See *Taylor v. Wetmore,* 10 Ohio, 490; *Bank v. Liefendorf,* 90 Ill. 396; *Crane Co. v. Specht,* 39 Neb. 123 (57 N. W. Rep. 1015); *Penoyer v. Watson,* 16 Johns. 100. Thus, in *Smith v. Montgomery,* 3 Tex. 199, the defendant wrote and forwarded a letter of credit, as follows: "Col. Smith & Pilgrim—Gentlemen: Mr. A. W. Tennard wishes to get some dry goods on time. If you will furnish, I will see you paid, as far as the amount of $3,000, and much oblige, yours, with respect, James S. Montgomery." This was addressed on the back to Smith alone. Smith and Pilgrim had been partners in business, but a short time before had dissolved partnership. The letter, on the back, being addressed to Smith alone, it was delivered to him, and he supplied the goods to Tennard, who failed to make payment; and suit was brought to recover from Montgomery, as guarantor. The court, in deciding the case, says: "Upon consideration, we must look to the address on the face of the letter, and not to the direction on the back of it, to ascertain the party to

whom its application and promise were intended by the writer to have been made; that, bearing upon its face a direction and address full and complete and free from ambiguity, we must take that as the certain criterion to determine its application, without regard to the discrepancy in the superscription. If the letter did not bear upon its face the proper address, resort might be had to the superscription, or perhaps to other extrinsic evidence, if necessary, to determine its direction and application. *Bell v. Bruen,* 1 How. 169. But when the contract, on its face, is complete and perfect, and certain to every intent, as well in respect to the parties as to the subject-matter, we do not think it admissible to resort to anything extrinsic to control the express terms and clear import of the face of the instrument. * * * It is a well-settled rule, applicable to this class of cases, that the liability of a guarantor or surety cannot, by implication or otherwise, be extended beyond the terms of his actual engagement. It does not matter that a proposed alteration would even be for his benefit, for he has a right to stand upon the very terms of his agreement. The case must be brought strictly within the terms of the guaranty, when reasonably interpreted, or the guarantor will not be liable." To the same effect, *Barns v. Barrow,* 61 N. Y. 39. We are aware that some courts have held that, when a guaranty is made to a house as a house, the circumstance of taking in a new partner makes no difference as to the extent of the engagement. See *Pease v. Hirst,* 10 Barn. & C. 122; *Greer v. Bush,* 57 Miss. 575; *Barclay v. Lucas,* 1 Term R. 291, note. But in all of these cases there was something on the face of the instrument which indicated that the guarantor intended to be bound to the house or concern, no matter what its membership. Thus, in the first case, the note guarantied was made payable to the firm or order. In the last, the conduct of one Jones in a shop or counting house was guarantied.

The true rule, we think, is that announced by Chief Justice Marshall in the case of *Grant v. Naylor,* 4 Cranch,

224. The facts were as follows: A letter of credit was addressed to John and Joseph Naylor. The goods were furnished by John and Jeremiah Naylor. The letter was designed for John and Jeremiah Naylor, and action was brought by them thereon. Chief Justice Marshall, in deciding the case, says: "That the letter was really designed for John and Jeremiah Naylor cannot be doubted; but the principles which require that the promise to pay the debt of another shall be in writing, and which will not permit a written contract to be explained by parol testimony, originate in a general and a wise policy, which this court cannot relax so far as to except from its operation cases within the principle. Already have so many cases been taken out of the statute of frauds which seem to be within its letter that it may be well doubted whether the exceptions do not let in many of the mischiefs against which the rule was intended to guard. * * * On examining the cases which have been cited at the bar, it does not appear to the court that they authorized the explanation of the contract which is attempted in this case. This is not a case of ambiguity. It is not an ambiguity patent, for the face of the letter can excite no doubt. It is not a latent ambiguity, for there are not two firms of the name of John & Joseph Naylor & Co., to either of which this letter might have been delivered. * * * In such a case the letter itself is not a written contract between Daniel Grant, the writer, and John and Jeremiah Naylor, the persons to whom it was delivered. To admit parol proof to make such a contract is going further than courts have ever gone, where the writing is itself a contract, not evidence of a contract, and where no pre-existing obligation bound the party to enter into it." 4 Cranch, 224. See, also, as sustaining these conclusions, *Devaynes v. Noble,* 3 Eng. Ruling Cas. 336; *Pemberton v. Oakes,* 4 Russ. 154; *Bill v. Barker,* 16 Gray, 62; *Barnett v. Smith,* 17 Ill. 565. In *Hunt v. Gray,* 76 Iowa, 268, we announced the same rule, as follows: "Where there is no ambiguity in the writing, there can be no resort to parol evi-

dence to ascertain the meaning of the parties, or the sense in which the words of the agreement were intended, but they must be construed according to the context and usage of the language." Aside from this there is no claim in the petition that the guaranty was to any other person or persons than those to whom it was addressed, Shaw & Schoonover, and they alone could rely upon it; and, as the guarantor did not undertake to become responsible for any money Schoonover should let his sons have for use in their business, he should not be charged therewith.

Appellee contends, however, that a contract of guaranty, under our Code, is assignable, and that Schoonover, as assignee, may recover thereon. Let it be conceded that such a contract is assignable,—as we have no doubt it is,— yet it does not follow that a mere offer of guaranty is assignable before it is acted upon. In other words, we have no doubt that the obligation of the guarantor to the firm of Shaw & Schoonover for the balance due them from Osborne. Bros. at the time they dissolved was assignable, and that Schoonover became the owner thereof, and had the right to enforce the same. This is what is held in *Bank v. Carpenter*, 41 Iowa, 518. But that is quite a different proposition from the claim that Schoonover could act on David Osborne's guaranty after the dissolution of the firm of Shaw & Schoonover. In one case there is a completed contract, which is assignable. In the other there is a mere offer of guaranty to a particular firm, which is inoperative until acted upon by that firm. And this offer cannot be assigned, for the reason that the guarantor has the right to select his own creditor. If he does not have that right, then there is no difference between a general guaranty and one addressesd to particular persons. That there is a difference, all the authorities are agreed, and in principle there must be; for it cannot be that one may make another his debtor without his consent and against his protest.

As the guaranty did not bind the maker for advance-ments made by plaintiff to the principal debtor, the next question is, can plaintiff recover for the balance due from Osborne Bros. to Shaw & Schoonover at the time of the dissolution of the last-named firm? That he may do so is certain, unless this balance has been paid. As we have seen the account was continued as if there had been no change in the firm. By carrying this balance into the general account, plaintiff made it a part of his general running account. On this account he made credits exceeding two hundred thousand dollars after the dissolution of the firm. How should these credits be applied? The general rule is that they should be applied to the payment of debit items in the order of their dates. *Pidcock v. Voorhies,* 84 Iowa, 710; *Bank v Hollinsworth,* 78 Iowa, 575, and authorities cited. Is that rule applicable to the facts in this case? Had the account been broken at the time the firm of Shaw & Schoonover dissolved, had it not been continued by Schoonover as an open, continuous account, or had Schoonover done anything to indicate that he did not intend the general rule as to application of payments to apply, there would be much force in appellee's position, and the authorities cited by his counsel would apply. See *Porter v. Railroad Co.,* 99 Iowa, 351. But, as we understand it, the account was not even balanced at that time. If it was, it was simply to indicate the value of the assets of the firm; and Schoonover thereafter treated that balance, or the amount then due, as a part of one continuous, open account against Osborne Bros. Indeed, he sues on a continuous account commencing in August, 1882, and continuing without interruption down to August 5, 1896. He no doubt thought that he could rely on the guaranty in suit, and never for a moment looked upon the account as other than a continuous, open, and running one. Under such a state of facts, it is clear that the credits made from time to time on that account should be applied to the extinguishment of the oldest items

thereof; and, as these credits are very largely in excess of the
amount owing by Osborne Bros. to Shaw & Schoonover, that
account is fully settled and paid, and there can be no recovery
from David Osborne on account of his guaranty.     See, as
sustaining these conclusions, *Hersey v. Bennett,* 28 Minn.
86 (9 N. W. Rep. 590); *Devaynes v. Noble,* 1 Meriv. 572;
*Crompton v. Pratt,* 105 Mass. 255.     What is known as the
"*Clayton Case*" (*Devaynes v. Noble, supra*) is exactly in
point, as also is *Pemberton v. Oakes,* 4 Russ. 154.     *Morgan
v. Tarbell,* 28 Vt. 498, is another case much like the one at
bar, and it is there held that payments should be
applied to the satisfaction of the old balance.     The court
erred in not instructing as requested, and in charging the
jury that plaintiff might rely on the written guaranty.

Defendants filed a motion to release and discharge the
attached property because no notice of the attachment was
ever served on them.     The property attached consisted of
certain personal property belonging to Osborne Bros. and
L. D. Osborne, and certain real estate and personal property
belonging to David Osborne.     It affirmatively appears that
no notice in writing was served upon William M. or L. D.
Osborne.     A copy of the inventory and appraisement was
delivered to L. D. Osborne, but this is in no sense a notice,
and does not meet the requirements of the statute.     But as
defendants Osborne Bros. and L. D. Osborne filed counter-
claims based upon the wrongful levy of the attachment, and
as the sheriff in fact took manual possession of the property,
and continued to hold it down to the time of trial, neither
party should be heard to say that there was no valid levy.
Plaintiff surely cannot deny it, and as defendants have elected
to counterclaim for their damages, they should not be per-
mitted to say, after they have suffered defeat upon that issue,
that there was in fact no levy.     *Hamilton v. Hartinger,* 96
Iowa, 7.     Had defendants stood upon their motion to dis-
charge, and not pleaded a counterclaim for damages, they
would undoubtedly be entitled to a release and return of the

property. *Bank v. Kellog,* 81 Iowa, 124, is not in point. The attempted levy in that case was on real estate; and plaintiff, by objecting to defendants' evidence to sustain his counterclaim, evidently withdrew all claim to the property under the invalid attachment. There is this additional fact with reference to the levy upon David Osborne's property: The return shows that no notice was given him, but it also recites that David Osborne was not found within the county. It further appears that the writ was levied upon his property on August 6, 1896, and that notice of the levy on real estate was served upon him on the 10th day of August, 1896. The levy, therefore, was sufficient, both on the real and personal property of David Osborne, and the motion to discharge was properly overruled. *Bank v. Converse,* 101 Iowa, 307.

II. Appellee has filed a motion to dismiss the appeal because appellant David Osborne has satisfied and performed the judgment. The facts with reference to this contention are that defendant David Osborne, after sale of his real estate on execution upon the judgment rendered in this case, sold his equity of redemption to W. T. Shaw, who in turn conveyed to Ella Osborne, one of defendant's daughters, who made redemption from the execution sale. The conveyance was really from David Osborne to his daughter, and the deed was made to Shaw to secure him for money advanced. After the redemption was completed, Shaw conveyed to Ella Osborne, and she made a mortgage back to Shaw to secure him for the amount advanced. David Osborne has not in fact paid the judgment, or any part thereof, nor has he in any manner recognized its validity. The motion to dismiss the appeal is therefore overruled. As sustaining our conclusions on this proposition, see *Tiffany v. Tiffany,* 84 Iowa, 122; *Grim v. Semple,* 39 Iowa, 570.

III. But one question remains, and that is, what is the amount of interest to which plaintiff is entitled on his account against Osborne Bros.? The court instructed that if they found plaintiff had furnished Osborne Bros. from

time to time a full statement of the account, and that they retained possession thereof without objection, then such statements amounted to a settlement, and were binding on them and their surety, David Osborne; and that plaintiff was entitled to recover the amount advanced by him to Osborne Bros., and used by them in their business, not exceeding the amount claimed in the petition. The account, as we have seen, embraced large amounts charged as interest on daily balances. The evidence tended to show that these damages were entered on the pass book or bank book delivered to Osborne Bros., and that they made no objection thereto. Plaintiff virtually conceded that, but for the fact that Osborne Bros. had notice and knowledge of these charges, he could not recover interest. Do these facts change the rule? We think they do. As the jury may have found that defendants Osborne Bros. received their pass book, and knew of the charges for interest therein made, and made no objection thereto, the balance shown was in the nature of an account stated, and the interest charges can no more be impeached than if they had been paid, and action brought to recover them. *Allen v. Nettles' Adm'r,* 39 La. 780 (2 South. Rep. 602); *Knickerbocker v. Gould,* 115 N. Y. App. 533 (22 N. E. Rep. 573); *Isett v. Ogilvie,* 9 Iowa, 313. Osborne Bros. do not plead usury. They simply say that no interest can be charged. Under this state of the record, the instructions asked by defendants relating to the subject of interest were properly refused. The judgment as to Osborne Bros., William M. Osborne, and Lewis D. Osborne is AFFIRMED; and, for the error pointed out, the judgment as to David Osborne is REVERSED.