NOAH HARMON, Appellee, v. CLAUS HARTMAN, Appellant.

**GUARANTY:** Requisites and Validity—Consideration. The act of
1    a vendee in entering into a contract for the purchase of land on
the strength of another's promise to guarantee the fulfillment of
the vendor's contract of sale, furnishes adequate consideration for
such other's guaranty.

**GUARANTY:** Construction and Operation—Scope and Extent of
2    Liability. No different rule obtains in construing guaranties
than in construing other contracts, save that, when the terms
of a guaranty are once ascertained, the liability of the guarantor
is not to be extended by implication. Guaranty of the performance
of a vendor's land contract construed, and held to embrace the
return of the consideration paid.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

SATURDAY, DECEMBER 16, 1916.

ACTION upon a contract of guaranty, made by defendant
as an inducement to plaintiff to purchase some land in North
Dakota. Defendant admitted the making of the contract,
but claimed that it did not cover the loss claimed by plaintiff;
that it was without consideration; and that it never became
effective. Upon the issues joined, the case was tried to a
jury, and, at the conclusion of the testimony, the trial court,
on motion, directed a verdict for plaintiff, and defendant
appeals.—*Affirmed.*

*J. C. France,* for appellant.

*Chas. W. Kepler & Son,* for appellee.

DEEMER, J.—Defendant was a real estate agent, living
at Tipton, Iowa. He was handling land in North Dakota
and elsewhere, and was well acquainted with plaintiff. For
many years, he tried to induce plaintiff to go into North
Dakota and purchase real estate there. He represented that

he, defendant, had dealt in these lands himself and had made money thereon, and that plaintiff was foolish in not making some investments himself. Finally, in April of the year 1910, he, defendant, induced plaintiff to go with him, to look over some of the lands which were then on the market. They started for Bismarck, North Dakota, but went via Minneapolis, stopping there at the office of what was known as the Tri-State Investment Company, a corporation engaged in handling North Dakota land. There they met an agent of the company, by the name of Towne, who accompanied plaintiff and defendant to North Dakota. Arriving at Bismarck, they were shown certain tracts of land which it was claimed were owned by the investment company, and which were on the market for sale.

The location of these lands was pointed out, and plaintiff was urged to buy some of them, on the theory that it would prove a profitable investment. The investment company was represented as a rich and perfectly reliable corporation, and defendant said he would be willing to guarantee the performance of any agreement that it might make. Plaintiff was not disposed to make any ventures, but defendant still pressed the matter, saying that he did not want to go back to Iowa without selling the plaintiff some land; that it would help him, defendant, in securing other purchasers of lands in that vicinity. In order to induce plaintiff to buy, defendant finally said that he would personally guarantee any contract which plaintiff might make with the investment company. Finally yielding to these persuasions, plaintiff executed his contracts with the investment company for some lands. These were drawn up and signed by the parties on April 14, 1910, at Bismarck.

The papers were signed late in the evening, and, as plaintiff was in a hurry to get away on a train, the understanding was that defendant, when he got through with another customer whom he had for land, would return to Iowa, and

execute his guaranty contract. Plaintiff then left for Iowa, taking the two contracts with him. About two weeks thereafter, defendant came to Tipton, and, pursuant to promise, signed the guaranty contract upon which this suit was brought. It soon transpired that the investment company had no title to the lands it had contracted to sell to plaintiff, and that it was unable to secure title thereto. Plaintiff thereupon made demand of the investment company to return him the money paid on the contracts, to wit, the sum of $250, but this it failed and refused to do. He also made demand upon the defendant to refund the money to him on his contract of guaranty, but this, too, was refused. He then brought this action upon the guaranty, to recover the money paid, with interest, with the result hitherto indicated. The original contracts for the purchase of the lands contained these, among other provisions:

"Bismark, N. D., April 14th, 1910.

"Received of Noah Harmon, P. O. Tipton, County Cedar, State Iowa, Note $00. due............Cash $250. Total $250 as earnest money for the purchase of the following described property, situated in the county of Burleigh and state of North Dakota, viz.: The North East 1/4 of Section 12 in Township 138 and Range 77, which we have this day sold and agreed to convey to said Noah Harmon for the sum of $3,920, on terms as follows, viz., $250 in hand paid as above, and the sum of $50 allowed as car fare and expenses. The sum of $950 when warranty deed and abstract showing good title is delivered Harmon, balance by assuming or executing mortgage to part Tri-State Investment Co. may select in the sum of $2,670 due five years from date, with interest on deferred payments at 6 per cent from date of this contract, payable annually, payable on or before the date named above, or as soon thereafter as a warranty deed conveying good title to said land is tendered, time being considered of essence of this contract. . . . And it is agreed that, if the

title to said premises is not good and cannot be made good, then this agreement shall be void and the above earnest money refunded. But if the title to said premises is good, in the name of the grantor, and said purchaser refuses to accept the same, said earnest money shall be forfeited to Tri-State Investment Co. as liquidated damages. No agreement verbal or written not here contained shall be considered as a part hereof. And said sale is made subject to the approval of the owner of the said land; should he disapprove of the sale, then and in that case, funds to be returned and Tri-State Investment Company released from any liability.

"Tri-State Investment Company. By O. LUND, Mgr.

"I hereby agree to purchase the said property for the price and upon the terms above mentioned, and also agree to the conditions of forfeiture and all other conditions herein expressed.

"NOAH HARMON."

This is the substance of the original contract. At the same time, and as a part thereof, the following contract was signed:

"Bismark, N. D., April 14th, 1910.

"For and in consideration of Noah Harmon of Tipton, county of Cedar and state of Iowa, having this day purchased from the Tri-State Investment Co. of Minneapolis, Minn., the N. E. ¼ of Section 12, Twp. 138, Range 77, Burleigh County, N. D., for a consideration of $3,920, on terms as follows, $250 in hand paid, $950 to be paid when warranty deed and abstract showing good title is delivered to Harmon. The sum of $50 having been allowed as car fare and expenses, and the said Harmon to execute a mortgage of $2,670 against the above described land due five years from date, the Tri-State Investment Co. agree and guarantee, as a part of this consideration and transaction, that should the said Harmon be dissatisfied with his purchase of the above described land, that they will repurchase the land from him

'on or before November 15th, 1910, at a net advance to said Harmon of $3 per acre, for all the land that is still in its wild natural state, and at a net advance of $5.50 for all the land that has been broken up during the spring of 1910, repaying him the amount of money that he may have invested in cash, together with profits as above designated. The Tri-State Investment Company to pay all interest on the mortgage, taxes and all other assessments that may be levied against the above described premises. It is understood by both parties to this contract that the said Harmon must give the Tri-State Investment Co. 30 days' notice as to his intention to have the Tri-State Investment Co. redeem the land as per above agreement.

"Signed at Bismark, N. D., the day and date first above written.

"Tri-State Investment Co.    Per O. LUND, NOAH HARMON.

"Signed in the presence of Claus Hartman and G. M. Hogle."

The guaranty contract signed by defendant, upon which this action is predicated, was written, as we understand it, on the paper which contained the agreement last above quoted, and it reads as follows:

"Tipton, Iowa, April 28, 1910.

"For valuable consideration, I hereby guarantee the performance of all the agreements above by the Tri-State Investment Co. in all respects and as therein specified.

"CLAUS HARTMAN."

I. It is contended in argument that this guaranty contract, executed something like two weeks after the original papers were signed, is without consideration, and a mere

1. GUARANTY: requisites and validity: consideration.

*nudum pactum*, upon which no action will lie. The fact that the papers were not executed on the same day is of little or no importance.

The testimony shows, as we think, practically without dis-

pute, that plaintiff entered into his contracts for the purchase of the lands upon the strength of defendant's promise to guarantee the performance of these contracts, and that the defendant signed the guaranty in fulfillment of his promise to execute the guaranty. This, of course, constituted a sufficient consideration for the agreement, and defendant's plea of want of consideration is without merit.

Again, it is contended that the guaranty does no more than obligate the defendant to make good the promises of the investment company to repurchase the land from the plaintiff in accordance with the terms of the 2. GUARANTY: construction and agreement of said company, and that, as operation: scope and extent of liability. plaintiff has never offered to deed the land to the investment company, and has never demanded the repurchase price with profits, he has no right to recover upon defendant's guaranty. To our minds, this is too narrow a construction of the agreement. Of course, the liability of a guarantor is not to be extended by implication, and he has the right to stand upon the exact terms of his agreement. But, like every other contract, it must receive a reasonable and sensible construction, according to the intent of the parties, as read in the light of the circumstances surrounding the transaction, and the purposes for which it was made. No different rule obtains in construing these contracts than others, save that, when the terms of a guaranty are once ascertained, the liability of the guarantor is not to be extended by implication. He is entitled to rely upon the precise terms of his contract, when those terms are ascertained. There can be no doubt of the construction of this guaranty. Defendant guaranteed the performance of all the agreements *above* by the investment company, in all respects as therein specified. The *agreements above* referred to the purchase of the lands by plaintiff from the investment company; the payment of $250 in cash, as part of the purchase price; the allowance of $50 car fare and certain other matters; and the repayment of the purchase price with certain profits,

etc., in the event plaintiff became dissatisfied with his purchase.

This guaranty agreement of the investment company was expressly made a part of the original agreement, was stated to be a part of the consideration of the transaction, and it expressly provided for a return to plaintiff of all money invested. The original agreement provided that, if the title could not be made good, then the agreement should be void, and the earnest money should be refunded to the purchaser.

Construing these instruments together, as we think we should, the investment company expressly agreed to refund the money paid, in the event the title to the land could not be made good, and defendant's guaranty covered this obligation. Aside from this, it will be observed that the investment company never had any title to the lands which plaintiff undertook to purchase, and could not procure title when the time arrived for performance. It never deeded the land to plaintiff, or offered to do so at any time, and never furnished an abstract of title. As plaintiff never received the title, he had none which he could return to the investment company. He notified the investment company, in June of the year 1910, that he would not take the land; and thereafter, he demanded of defendant the return of his $250. When plaintiff expressed himself as dissatisfied with the deal, and it was discovered that the investment company had no title to the land, he made his demand on the investment company for the return of his money, and, as he had not received a deed to the land, the making of one back to the company, or an offer to do so, would have been an idle ceremony. The placing of such a deed of record would have done no more than cloud the title. By the terms of the last contract quoted, the investment company was given the right to repurchase the land, should plaintiff become dissatisfied, and it was to refund him the amount he had paid, and also a

profit upon the land. Plaintiff became dissatisfied, and he demanded the amount of the purchase money paid, with interest, waiving all the promised profits. Of this, defendant is in no position to complain. The contract was, in reality, nothing more than an agreement to refund, with certain profits added, in the event plaintiff elected not to go on with the purchase. Defendant guaranteed that the investment company would comply with this promise, and plaintiff is entitled to recover what he paid. Moreover, no time was fixed for the performance of either contract, save that the payments were to be made and other papers executed when the investment company made a warranty deed and furnished an abstract showing. good title. This the company never did. But, by the terms of the second agreement, plaintiff had until November 15, 1910, to express his dissatisfaction with the deal, and, when this was done, he was entitled to recover the purchase money paid. Under the terms of the second contract, we think plaintiff had a right to recover the $250 advanced.

II. Claim is made that the judgment should have been reduced by the sum of $32, an amount which plaintiff received by way of refund. Plaintiff says that this should be applied on the $50 railway fare advanced by him, and we think this is correct. This amount was treated as part of the purchase price, and, had it been in the full sum of $50 advanced, plaintiff was entitled to use it to reimburse himself for money expended as railway fare, etc.

We discover no error, and the judgment must be, and it is —*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.