L. A. ANDREW, State Superintendent of Banking, Appellant, v. G. H. AUSTIN et al., Appellees.

No. 40160.

SEPTEMBER 22, 1930.

REHEARING DENIED JANUARY 14, 1932.

C. H. E. Boardman, for appellant.

M. W. Hyland and Deacon, Sargent & Spangler, for appellees.

STEVENS, J.—Austin and Goodell, appellees, were the president and cashier, respectively, of the Commercial Savings Bank of Tama, Iowa, and they, with the other defendants, constituted the board of directors. On December 31st, 1923, appellees, on the demand of the state superintendent of banking, in writing guaranteed the payment of certain customers' notes held by the bank, a list of which was attached to the contract. The foregoing contract, which is the one in suit, was executed to take the place of a prior similar contract bearing date December 24, 1922. The lists of notes attached to the respective contracts are not in all respects identical. On March 20, 1926, $49,200 advanced by the shareholders of the bank was applied as follows: $29,276.45 to take up paper covered by the guaranty; $19,097.79 to take up paper not included in such guaranty; and $10,498.00 to reduce the total amount due the bank secured by real estate. This left $927.76 of the amount unaccounted for.

■ The principal controversy in this case involves the sum applied in satisfaction of the notes admittedly covered by the guaranty. It is the contention of appellant that the sum so advanced or paid by the shareholders was, in fact, a voluntary assessment on the stock held by them, and therefore it belonged absolutely to the bank, and could not legally be applied to the payment of notes covered by the guaranty so as to discharge the guarantors from liability thereon. The answer of appellant to this contention is that the sum raised was not intended to constitute an assessment, voluntary or otherwise, on the stock, but that it was voluntarily raised in part for the express purpose of taking up notes included in the guaranty.

It is urged by appellant that the evidence is without conflict and that only questions of law are presented. It seems to us, however, that the evidence is not only conflicting in material respects but that it is susceptible of contradictory inferences. Prior to the execution of the guaranty, the banking department was strenuously insisting that something be done to strengthen the condition of the bank. There was talk of an involuntary assessment. Correspondence had by the bank with the banking department refers to the transaction as a voluntary assessment. Testimony was offered in behalf of appellees, tending to show that the sum raised voluntarily was paid by the shareholders for the purpose of taking out of the bank's assets a portion at least of the notes for the payment of which they had assumed liability as guarantors. The banking department was fully advised of the steps taken by the directors, the amount realized, and the application made thereof. On March 17, 1926, the appellee Austin wrote to the deputy superintendent of banking, giving a complete list of the notes taken out of the bank's assets. The letter refers to the fund raised as a voluntary assessment. The record discloses no protest from the banking department as to the application made of the funds by the officers of the bank. The evidence also shows that three of the bank's directors, including the president, were constituted as trustees to collect the sum in question from the shareholders, and that cash and checks received for that purpose were kept in an envelope until the holders of all but eight shares had responded. The mere designation of the transaction as a voluntary assessment does not conclusively establish its character. If the sum collected was, in

fact, an assessment upon the shareholders of the corporation, it belonged to the bank, and could not be legally applied in settlement of the obligation of the guarantors. Brodrick v. Brown, 69 Fed. 497; Bidwell v. Pittsburg, O. & E. L. Pass. Ry. Co., 6 Atl. (Pa.) 729. There can be no question but that the shareholders had a perfect legal right to make a voluntary contribution for the benefit of the bank, to be applied as they saw fit. The fund was denominated a "pool." The notes, to the aggregate amount stated, were actually taken out of the assets of the bank, and are in the possession of the shareholders. They were not, however, transferred by endorsement or assignment, nor were they, in the usual and ordinary manner, charged off the books. A bracket in lead pencil was drawn on the page of the ledger on which they were entered, coupled with the naked pencil memorandum "Bought by the pool."

It will be observed, and this is a circumstance of weight in determining the fact questions involved, that the application of more than $10,000 of the total amount collected was made for the benefit of the bank, to purposes wholly consistent with appellant's theory of voluntary assessment. We find nothing in the record tending to show that it was contemplated by either the banking department or appellees that the latter were to advance a 100% assessment on their stock, independent of and additional to the liability previously assumed for an equivalent sum. Of course, it is significant at this point that the guaranty bears date December 31, 1923, whereas the collection of the fund was completed in March, 1926. There was evidence before the court tending to support both the theory of appellant and of appellees. There was testimony from which the inference might be drawn that an assessment upon the stock required by the department in charge was intended to be voluntarily carried out. On the other hand, there was testimony to the effect that no assessment was intended, and that the shareholders formed and carried out their own plan to form a pool and purchase the bad paper, and thereby get the benefit of the salvage, if any, in the notes. There was testimony to the effect that this matter was discussed with a bank examiner. In this situation of the record we think a fact issue was clearly presented. The finding of the trial court thereon is conclusive on this count.

II. We are not on this appeal concerned with the ap-

plication made of the $10,498.00. There remains, however, a series of notes covered by the guaranty which were not purchased by the pool, and which have not been paid or otherwise accounted for. Appellees deny liability upon any of the remaining notes. Their denial is based upon two grounds: First, that the bank held no such notes as are described in the guaranty at the time it was signed; and second, that they were released by subsequent material alterations and changes in the notes. Before proceeding to consider these contentions as applied to the separate notes, it may be well to discuss briefly the law applicable to and governing the liability of guarantors. The same rule is to be applied in the construction of contracts of guaranty as other contracts. Harmon v. Hartman, 178 Iowa 912. The contracts of sureties and guarantors are to be construed strictly according to their terms, which will not be enlarged or extended by implication. Schoonover v. Osborne, 108 Iowa 453; Harmon v. Hartman, supra; Davis Sewing Machine Co. v. McGinnis, 45 Iowa 538; Bousquet v. Ward, 116 Iowa 126; Crapo v. Brown, 40 Iowa 487; Hancock v. Wilson, 46 Iowa 352; Berryman v. Manker, 56 Iowa 150; Springer Litho. Co. v. Graves, 97 Iowa 39; Tansey v. Peterson, 88 Iowa 544; Merchants Nat. Bank v. Cressey, 164 Iowa 721; Ida County Savings Bank v. Seidensticker, 128 Iowa 54; Hatch & Brookman v. Kula, 195 Iowa 619; Dewey Column & Mon. Wks. v. Ryan, 206 Iowa 1100. In other words, a guarantor is entitled to have his contract carried out strictly according to its very terms. No deviation, even for the benefit of the guarantor, will be tolerated. Schoonover v. Osborne, supra. Appellant relies upon the exception to this general rule that a guarantor will not be released from liability if he knew of and assented to changes in the terms of the contract. This exception is also well established. Schoonover v. Osborne, supra. Accepting the foregoing rules that a surety or guarantor is a favorite of the law, that any material deviation from the terms of their contracts operates to release them from liability, and that such contract may not be enlarged or extended beyond the strict terms thereof, let us consider each of the remaining notes in controversy separately. They are referred to in the written guaranty merely as the following described bills receivable, or other assets, and are described in the list attached thereto as follows: "E. W. Bartlett, $205; Carl A. Moyer, $1352;

J. H. Stice, $125; G. & L. Holden, $5000; Frank A. Moyer, $2000; E. C. Morris, $2000; Earl M. Richards, $2147.'' The notes actually held by the bank were as follows: ''E. W. Bartlett, a note of $225; a note of Charles A. (not Carl) Moyer, $1352; J. H. Stice, $241, formed by merging the original note with other indebtedness; G. & L. Holden notes aggregating $6199.40; Frank A. Moyer five notes, aggregating $6547.66; E. C. Morris two notes, aggregating $3008.98; Earl M. Richards, three notes, aggregating $2147.07.''

Some of the foregoing notes were renewed subsequent to the guaranty, with other and different sureties. So far as there were changes and alterations in the notes actually in the bank that were covered by the guaranty, the changes were brought about by either the president or cashier of the bank, who were in full charge thereof. These officers are, therefore, conclusively charged with notice thereof, and must be held to have assented thereto. But do such notice and assent avoid the rule which requires that the contract be strictly carried out according to its very terms? There is no ambiguity in the instrument. The names of the principal debtors are given in every instance, together with an amount, as above shown. The guaranty and list of notes attached were prepared on behalf of the banking department, and were presented to and signed by appellees at the request thereof. A series of notes aggregating an amount exactly, or approximately, equal to that stated in the guaranty and the alleged corresponding note designated in the guaranty are by no means identical. There is, for example, a clear distinction between a note for $205 and a note for $225. The president and cashier of the bank, and, no doubt, other members of the board of directors, were familiar with the notes held by the bank at the time the guaranty was executed. It would not, of course, have been a difficult matter to have correctly described the notes and obligations of which it was desired to have the directors assume the payment. The instrument before us must be construed most strongly against the party preparing it. This is the universal rule. To permit the introduction of parol testimony to show what notes and obligations were, in fact, contemplated by the parties, and that they are different from those described in the guaranty, would be to vary the terms of an unambiguous contract for the purpose of sub-

jecting guarantors to liability. This would be contrary to the established rules governing such liability.

There is no way to harmonize the notes described with the notes actually in the bank, except to receive parol testimony for that purpose. The guaranty was not voluntarily assumed by the directors, but was made necessary by the ruling of the state banking department. No different rule of construction is to be applied because of the relationship of appellees to the corporation or their intimate knowledge of and connection with the assets of the bank. Appellees, by signing the written contract, assumed an independent liability: that is, one not imposed upon them either as shareholders, officers, or directors of the bank. It goes without saying that they were deeply interested in keeping the bank open and maintaining its credit. None of these matters, however, invoke a different rule of construction. In the last analysis they were guarantors in the usual sense, and nothing more. We see no escape from the conclusion reached by the trial court as to the liability of appellees for the payment of the notes in question. There is a claim made by appellant that some of the notes were taken out by the pool on which the full amount of interest due was not paid.

The record is not quite clear on this point.

There is also one item that was compromised on terms causing a loss to the bank. There is also another involving the disposition of real estate. The notes involved in these settlements were delivered to the makers. We find no sound basis in the record on which a reversal may be predicated. We conclude, therefore, that the judgment must be, and it is, affirmed.—Affirmed.

MORLING, C. J., and EVANS, FAVILLE, DE GRAFF, ALBERT, WAGNER, and GRIMM, JJ., concur.